### KANSAS CITY STAR CO. v. CARLISLE.

(Circuit Court of Appeals, Eighth Circuit. March 29, 1901.)

No. 1,447.

1. LIBEL—ACTION FOR DAMAGES—EVIDENCE.

In an action for libel based on the publication by defendant in its newspaper, of an article purporting to give an account of the plaintiff's arrest on a criminal charge and removal to another state for trial, and making certain libelous statements regarding the plaintiff to the effect that he was a member of a gang of cattle thieves, defendant filed a plea in justification and also a plea in mitigation of damages, in the latter of which pleas was embodied an article, subsequently published by the defendant, which stated that the case against the plaintiff had been dismissed and that he had been able "to convince the prosecutor that the charges were false." Defendant also averred in its plea of justification that the criminal case "was never tried on its merits," and counsel for the defendant in his opening statement said to the jury, in substance, that the criminal proceeding was dismissed as against the plaintiff because he turned state's evidence. A contested issue arose during the trial and was sub-

mitted to the jury as to whether the defendant filed its plea of justification in good faith, believing or having reason to believe that the plaintiff was guilty of the crime charged against him. The trial judge admitted in evidence over an objection of the defendant the entire record of the criminal case against the plaintiff, consisting in part of a sworn statement of the prosecuting attorney, which he had filed, giving his reasons for the dismissal of the action without a trial; but in doing so the trial judge instructed the jury that such evidence should not be considered as bearing upon the question of plaintiff's guilt or innocence of the charge made against him. *Held*, that such action was proper; that in view of the false inferences which might be drawn from the statement made by the defendant's attorney in his opening, and from the statements contained in the defendant's pleas, the plaintiff was entitled to show all of the circumstances attending the dismissal of the criminal proceeding, so far as the record of the court in that case would disclose; that the entire record in said case was also admissible as bearing upon the issue whether the defendant had filed its plea of justification in good faith, inasmuch as it appeared that the defendant was fully acquainted with the contents of the entire record in the criminal case before such plea was filed. Sanborn, Circuit Judge, dissenting.

2. SAME—PLEA IN MITIGATION OF DAMAGES—EVIDENCE OF GOOD FAITH.

In those states where by statute a plea in mitigation of damages may be filed in connection with a plea of justification, and evidence in support of the former plea may be received although the latter plea is not established, an issue concerning the good faith of the defendant inheres in every action for slander or libel where a plea in justification is filed and is not sustained by the proof, since the jury, in determining whether punitive damages should be assessed, are entitled to consider whether the plea was interposed in good or in bad faith, and evidence having any legitimate tendency to develop the defendant's motive should be received. Sanborn, Circuit Judge, dissenting.

3. SAME—ISSUES AND PROOF.

Where the plaintiff in an action for libel or slander introduces in evidence facts not pleaded by him, to create an inference of express malice, and to lay a foundation for punitive damages, the defendant may, in turn, prove facts not pleaded, but which have a tendency to rebut such inference.

4. SAME—PLEA OF JUSTIFICATION.

Where an article published by defendant, which is made the basis of an action for libel, in substance charged that plaintiff was a member of a band of cattle thieves, and the agent through whom stolen cattle were sold, a plea of justification must allege specific instances of the theft of cattle by plaintiff, or of the receipt and sale by him of stock, knowing them to have been stolen; and the evidence in support of such plea must be confined to the instances so pleaded.

5. SAME—EVIDENCE—COMPETENCY OF PARTY'S OWN DECLARATIONS.

In an action for libel, defendant filed a plea of justification, in which it was alleged that plaintiff had received certain cattle, knowing them to have been stolen, and that such cattle had been cut out from his herd by a person deputized by the sheriff for that purpose. *Held*, that plaintiff was entitled to show, either by his own testimony or that of other witnesses, what was said and done at the time he was notified by the person so deputized that the stolen cattle had been found in his herd, including the statement made by him to such person in explanation of the manner in which such cattle came into his possession.

## In Error to the Circuit Court of the United States for the Western District of Missouri.

This is an action of libel, which was brought by Harold Carlisle, the defendant in error, against the Kansas City Star Company, the plaintiff in error. The libel complained of was published in the Kansas City Star, a daily newspaper published by the defendant company, in its issue of February 20, 1897;

the entire article being as follows (those portions of the article which were complained of as libelous are indicated by italics):

### "Arrested as a Thief.

*"Harold Carlisle, a Main Street Merchant, under a Cloud—Said to have been a Member of a Band of Cattle Thieves—To be Taken to Colorado To-Morrow to be Prosecuted—Had a Denver Office.*

"Harold Carlisle, of the firm of Carlisle, Peters & Co., dealers in furnishing goods at 818 Main street, was arrested this morning at his home, in Westport, by Detective O'Hare and Sheriff John D. Reeder, of Mesa county, Colorado, charged with receiving eight head of cattle stolen from the Utah Cattle Company's ranch in Mesa county. Sheriff Reeder has secured requisition papers for Carlisle, and will start for Colorado to-morrow morning with his man. Before Carlisle engaged in the furnishing goods business in this city, four years ago, he was a stock dealer in Colorado, in which state he is well known. Although doing business in this city, he has spent most of his time in Denver and other Colorado cities. His family live at 205 Woodworth avenue, Westport. *Carlisle's arrest is the outcome of the capture of Frank White, a noted Colorado cattle thief. He is now in jail at Grand Junction, Colo., and has confessed to shipping cattle to Carlisle, who has a cattle office in Denver. The eight head of cattle with which Carlisle is charged with receiving were stolen last June by White from the Utah Cattle Company's ranch in Mesa county. They were shipped to Carlisle at Dallas, Colo., where they were seized by Sheriff Reeder. Shortly after that sixty more head of stolen cattle, consigned to Carlisle at Denver, were seized by the sheriff. Reeder says Carlisle was not arrested at that time because the authorities did not have sufficient evidence to show that he knew the cattle had been stolen. Reeder says that now he has conclusive evidence that Carlisle was a member of the gang of cattle thieves which has been operating extensively in the western part of the state of Colorado; that he acted as agent for the thieves in disposing of their stolen stock. Carlisle had nothing to say about the charge, and refused to discuss the matter with the officer.* He is an Englishman of medium size, with dark hair, and wears gold-rimmed glasses."

The defendant admitted the publication of the article aforesaid, and filed a plea justifying the publication, the material parts of which plea were as follows:

"Defendant says: That on or about the months of April, May, and June, 1896, and for a long time prior thereto, plaintiff, Harold Carlisle, one William E. Gordon, and others were engaged in conspiracy, and were members of a band of cattle thieves organized for the purpose of rustling (that is, stealing cattle) in the states of Colorado and Utah, or at such place or places as such larceny might be perpetrated. That the part performed in said conspiracy by plaintiff was to guide and direct the same, as a rule, from a distance; to take no hand in the actual rustling of cattle, but to only receive and sell the same, and by standing ostensibly aloof, and maintaining as far as possible a seemingly honest bearing amongst certain business men and cattle buyers, be thereby the better enabled to get said stolen cattle past the inspectors and others, and convert them into money. That the part performed by said William E. was to act as a go-between between said cattle rustlers and the plaintiff; to immediately control said rustlers in the larceny of cattle, or to purchase cattle from outsiders knowing them to have been stolen; and, having collected said stolen cattle, to deliver them to plaintiff at some designated place, or to so mingle said stolen cattle with others honestly acquired, and so mutilate the brands on said stolen cattle, as to elude discovery. That the other conspirators above referred to were men employed by plaintiff and said Gordon in and about the ranch and range of said plaintiff and said Gordon, and who, in connection with their other duties, rustled cattle for their employers as opportunity presented, or they were men who, while not regularly employed at said ranch, were cattle thieves, and became a part of said conspiracy, and stole and sold cattle to said Gordon. And defendant says that one E. Frank White and one Edward Young, hereinafter mentioned, became parties to said conspiracy on or about April, May, or June, 1896, or

prior thereto; that the ranch of plaintiff and said Gordon, who was the foreman thereof, was located in the Blue Mountains of Utah, a most suitable place for the furtherance of said conspiracy; that plaintiff and said Gordon employed at said ranch desperate and dishonest men, who bore the reputation of being desperate and dishonest, and who were known to plaintiff and said Gordon to be cattle rustlers and thieves, and who were employed in furtherance of the conspiracy and common enterprise aforesaid. Defendant states that in pursuance of said conspiracy, and as a part of the common enterprise, one E. Frank White and one Edward Young, who joined in said conspiracy about the spring of 1896, or prior thereto, and who were cattle thieves, and reputed to be such, and known to plaintiff and Gordon as such, at the county of Mesa, in the state of Colorado, in the spring of 1896, eight head of neat cattle, to wit, eight steers, of the aggregate value of two hundred dollars, of the personal property of the Utah Colorado Cattle & Improvement Company, a corporation organized according to law, feloniously took, stole, and carried away; and defendant alleges that at or near the county of San Juan, in the state of Utah, in the spring of 1896, plaintiff, Harold Carlisle, and said William E. Gordon, the said eight head of cattle, to wit, eight steers, of the aggregate value of two hundred dollars, of the property of the Utah Colorado Cattle & Improvement Company, a corporation organized according to law, the said cattle having been then lately before feloniously stolen, taken, and carried away as aforesaid, feloniously did buy and receive; they, the said Carlisle and Gordon, then and there well knowing the said cattle to have been feloniously stolen, taken, and carried away as aforesaid. Defendant alleges that at or near the county of San Juan, in the state of Utah, on or about the spring of 1896, the plaintiff, Harold Carlisle, and William E. Gordon, other neat cattle, to the number of thirty or more, and of the aggregate value of over six hundred dollars, being the property of certain persons and corporations, said cattle having been then lately before feloniously stolen, taken, and carried away, feloniously did buy and receive; they, the said Harold Carlisle and William E. Gordon, then and there well knowing the said property to have been feloniously stolen, taken, and carried away as aforesaid. Defendant says that all the stolen cattle above referred to, to the number of about forty or more, were about the month of May, 1896, driven by said Gordon from said ranch in Utah to Ridgeway and Dallas, Colorado, and there, while in the possession of said Carlisle and Gordon, some nineteen head or more of said stolen cattle were cut out and taken away by one Thomas Mostyn, at the suggestion of John D. Reeder, sheriff of Mesa county, Colorado, and delivered by him to the owners thereof. The other cattle then in the possession of Carlisle and Gordon, to the number of about five hundred or more, and including the remaining stolen cattle above referred to, were shipped by plaintiff from Dallas, Colorado, to Denver, Colorado, at which last place some twenty-seven head or more (being the stolen cattle above referred to) were cut out by Charles Hartman and James Talbot, state cattle inspectors of Colorado, and sold, and the proceeds went to the owners. After the cattle above referred to were so stolen and retaken and restored to the owners, on or about October 6, 1896, four informations were filed by Lyman I. Henry, then district and prosecuting attorney of Mesa county, Colorado, in the district court of that county, charging said E. Frank White with stealing certain of said cattle. On October 15, 1896, said Lyman I. Henry, district attorney, filed in the office of the clerk of the district court of said Mesa county the affidavit of S. P. Chipman, charging plaintiff and said Gordon with receiving eight head of cattle of the Utah Colorado Cattle & Improvement Company, knowing them to have been stolen, and thereupon, on October 16, 1896, said Henry filed an information in said district court of said Mesa county, based on said affidavit, and charging said Carlisle and Gordon with receiving said eight head of cattle, knowing they were stolen. Said White pleaded guilty to the charge against him, and was sentenced to the penitentiary of Colorado for four years; but said prosecuting attorney, within a few days after plaintiff was taken to Colorado for trial, dismissed the information against said Carlisle and Gordon, and the same was never tried on the merits. Defendant says that, prior to the time it had published in its evening paper the words above alleged by plaintiff to be libelous, it was true that plaintiff had 'had

nothing to say about the charge, and refused to discuss the matter with the officers.' Wherefore defendant says plaintiff ought not to recover."

In addition to the aforesaid plea the defendant company also filed a plea in mitigation of damages, the material parts of which were as follows:

"Defendant further says, by way of mitigation, that in the spring of 1896 E. Frank White stole, took, and carried away about thirty-five head of cattle from various owners (among others, the Utah Colorado Cattle & Improvement Company, in Mesa county, Colorado), and W. E. Gordon, partner of plaintiff, bought for the partnership said cattle of said White, and the same were put with a herd of cattle of plaintiff's in the Blue Mountains of Utah, and driven to Ridgeway and Dallas for shipment about June 1, 1896. In the meantime John D. Reeder, sheriff of Mesa county, Colorado, learned of the fact of said cattle having been so stolen, and sent one Thomas Mostyn to Ridgeway and Dallas to identify and intercept the stolen cattle. Said Mostyn, at Ridgeway or Dallas, on behalf of said sheriff, about June 3d or 4th, cut out some nineteen head of stolen cattle then in the possession of said plaintiff and Gordon, and restored them to their owners; and said E. Frank White, who was present, was then arrested for larceny of the cattle and taken to Grand Junction, the county seat of Mesa county, Colorado, for prosecution, and the plaintiff shipped the balance of the herd (about five hundred head) to Denver. While en route he sold the cattle to one Bailey, subject to inspection at Denver, Colorado. When the cattle arrived at Denver, Charles Hartman and James Talbot, state cattle inspectors, cut out some twenty-seven head or more of cattle as stolen cattle, and the same were taken from the possession of plaintiff and sold, and the proceeds remitted to the real owners from whom the cattle were stolen. Four informations were on the ―――― day of October, 1896, duly made and filed in the district court of Mesa county, Colorado, by Lyman I. Henry, district attorney, charging said White with stealing said cattle, and said White was incarcerated pending a trial. On the 15th day of October, 1896, one S. P. Chipman made affidavit, and the same was filed with the clerk of said district court, that plaintiff and W. E. Gordon received eight head of cattle of the Utah Colorado Cattle & Improvement Company that were stolen, knowing that they were stolen. Thereupon said district attorney, Lyman I. Henry, duly made and filed his information on said affidavit on the 16th day of October, 1896, in the district court of Mesa county, Colorado, charging said H. Carlisle and W. E. Gordon with having received eight head of cattle of the Utah Colorado Cattle & Improvement Company, which had been stolen by said White and one Young, knowing them to have been so stolen. Thereupon a capias was duly issued out of said court for the arrest of plaintiff and said Gordon, and the same was duly delivered to John D. Reeder to arrest them. The plaintiff being then in Kansas City, Missouri, proper requisition papers were obtained from the governor of Colorado, on the governor of Missouri, upon affidavit of the assistant prosecuting attorney of said Mesa county, and placed in the hands of said Reeder, who proceeded to Kansas City, Missouri, to arrest plaintiff. Defendant further says, by way of mitigation, that it was on February 20, 1897, and prior thereto, engaged in the business of publishing a daily newspaper called 'The Kansas City Star,' and that Charles U. Becker was then a newspaper reporter of defendant, whose duty it was to procure news of public interest for publication in said paper, and it was part of his duty to attend the police station in Kansas City for that purpose. In the course of this employment said Becker ascertained and learned that plaintiff on February 20, 1897, was arrested by City Detective Andy O'Hare, then on the police force of said city, under a warrant duly issued on proper requisition papers duly issued in pursuance of a request of the governor of Colorado on the governor of Missouri, upon proper affidavit, and was to be taken by J. D. Reeder, sheriff of Mesa county, Colorado, then in Kansas City for that purpose, to Grand Junction, Colorado, the county seat of Mesa county, then and there to answer to an information duly made and filed by Lyman I. Henry on October 15, 1896, then district attorney of Mesa county, Colorado, duly charging plaintiff and W. E. Gordon with having feloniously purchased and received eight head of cattle from Ed Young and E. Frank White, belonging to the Utah Colorado Cattle & Improvement Company, knowing the same had been stolen, and that said Young and White had

no lawful right to sell the same; that said information was duly issued on the authority of an affidavit of one S. P. Chipman. While plaintiff was so under arrest, said reporter, desiring to get at the facts for publication in said paper, talked with John D. Reeder, then sheriff of Mesa county, Colorado, who was in Kansas City, armed with said papers, to take plaintiff to Grand Junction as aforesaid; and said Reeder told said reporter that Carlisle's arrest was the outcome of the capture of Frank White, a noted Colorado cattle thief, and that said White was then in jail at Grand Junction, Colorado, and had confessed to shipping cattle to Carlisle, and that Carlisle had a cattle office in Denver, and that the eight head of cattle with which Carlisle was charged with receiving were stolen in June, 1896, by White from the Utah Colorado Cattle & Improvement Company's ranch in Mesa county, and that they were shipped to Carlisle at Dallas, Colorado, where they were received by Reeder, and that shortly after that sixty more head of stolen cattle, consigned to Carlisle at Denver, were received by said sheriff, and that Carlisle was not arrested at that time because the authorities did not have sufficient evidence to show that he knew the cattle had been stolen; that he (Reeder) then had conclusive evidence that Carlisle was a member of a gang of cattle thieves which had been operating extensively in the western part of the state of Colorado, and that he acted as agent for the thieves in disposing of their stolen stock; and that he (Reeder) was going to take him (Carlisle) to Colorado to be prosecuted. Said reporter, having confidence in said Reeder as such sheriff, and having examined the papers aforesaid, was led to believe, and did honestly believe, the said statements of said Reeder to be true. Thereupon, to make further inquiry, he wanted to see said Carlisle and get his version, and tried to do so, but was informed that Carlisle refused to discuss the matter, and would neither deny nor affirm the truth of the charge. In an effort to see said Carlisle, said Becker asked Andy O'Hare, who had arrested him, and Officer Flahive, who had him in custody, for the privilege of seeing him and talking with him; but they told him that Carlisle refused to talk with him, and would not give any information at all. This further confirmed said Becker in the honest belief of what said Reeder had told him. Thereupon said Becker, in his capacity as such reporter, wrote the following article, and the same was printed on February 20, 1897, in said Kansas City Star newspaper, and was published by defendant in good faith, without malice, and in the honest belief of its truth. [Here follows the libelous article copied above.] After this article was so published. said Becker, as such reporter, learned that plaintiff, before leaving Kansas City, and after consulting with his attorney, declared his innocence of said charge; and thereupon said Becker wrote the following, on information then in his possession, and the same was published in said newspaper on the afternoon of February 21, 1897. This publication was made in good faith, in the honest belief in its truth, and without malice:

" 'Carlisle Taken to Colorado.

" 'The Main Street Merchant Goes with the Sheriff without a Legal Fight.

" 'Harold Carlisle, the furnishing goods dealer at 818 Main street, who was arrested yesterday morning for receiving eight head of stolen cattle, started for Colorado last night in charge of Sheriff John D. Reeder, of Mesa County, Colo. A few hours after being arrested yesterday, Carlisle sent for his attorney, I. N. Watson, of the firm of Beebe & Watson. The advisability of getting out of jail on a writ of habeas corpus was discussed. It was decided not to fight extradition, and Carlisle announced that he would return to Colorado with Sheriff Reeder, without appealing to the courts. Before leaving Kansas City, Carlisle declared he was innocent of the charge against him. He said that, while he was engaged in the furnishing goods business in this city, he was also interested in the cattle trade in Colorado. He had an agent (Gordon by name) stationed at Dallas, Colorado, who purchased Colorado cattle for him. Mr. Gordon, he admitted, purchased cattle from Frank White, the noted cattle thief, now in jail at Grand Junction, Colorado, who, Sheriff Reeder says, has confessed to being an agent for Carlisle. Carlisle admits that White is a member of a gang of cattle thieves who have been stealing cattle on a large scale for two years in Western Colorado. Sheriff Reeder is

firmly convinced that White and his band have been selling all their stolen stock to Carlisle's agent at Dallas. Carlisle says he believes the animus of his arrest is to get him back to Colorado as a witness against White. He intimated that he did not fancy the idea of telling what he knew of White, but Sheriff Reeder was armed with requisition papers, and there was nothing for Carlisle to do except to go with the officer. Carlisle drew a draft of $2,000 on a local bank, which he intends to use as bond money on reaching Colorado. He said he was satisfied he would have no difficulty in settling the matter on reaching Colorado, in which state he says he is well known as a stock man. He dealt exclusively in cattle in Colorado before moving his family to Westport and engaging in the furnishing goods business. He was accompanied to Colorado by Attorney Watson. Carlisle's friends in Kansas City were greatly surprised yesterday on learning of his arrest, for they had always considered him an upright business man.'

· The aforesaid information against plaintiff and Gordon so filed by said prosecuting attorney was dismissed or nolled in said district court at Grand Junction, and defendant, learning thereof, published in its newspaper on March 7, 1897, the following:

" 'Harold Carlisle Exonerated.

" 'The Kansas City Merchant Shows that He was Wrongly Prosecuted.

" 'Grand Junction, Colo., March 6th.

" 'In the district court this afternoon the district attorney asked the judge to enter a nolle prosequi in the case against Harold Carlisle, charged with receiving stolen stock. Carlisle was arrested about ten days ago in Kansas City, where he is engaged in business. He was able to convince the prosecutor that the charges were false.'

"Defendant further says, by way of mitigation, that at and prior to February 20, 1897, the general reputation of plaintiff for honesty was bad. Wherefore defendant says that said publication of February 20, 1897, did not materially injure plaintiff's reputation, as claimed in said amended petition."

There was a verdict and judgment below in favor of the plaintiff in the sum of $12,500, to reverse which the present writ of error was brought by the defendant company.

Wash Adams, William H. Wallace, and C. O. Tichenor, for plaintiff in error.

Sanford B. Ladd and Charles E. Small (John C. Gage, on the brief), for defendant in error.

Before CALDWELL, SANBORN, and THAYER, Circuit Judges.

THAYER, Circuit Judge, after stating the case as above, delivered the opinion of the court.

The assignments of error are very numerous, and embrace principally exceptions to the admission and exclusion of testimony. We shall consider them mainly in the order that they were discussed by counsel, so far as it is deemed necessary to consider them.

At the beginning of the trial, after reading the libelous article complained of, of date February 20, 1897, and the two other articles of date February 21, 1897, and March 7, 1897, which are set out above in the defendant's plea in mitigation, the plaintiff below offered in evidence a duly-certified copy of the record of a case entitled, "The People of the State of Colorado v. W. E. Gordon and H. Carlisle," theretofore pending in the district court of Mesa county, state of Colorado, which is the case above mentioned in the defendant's plea of justification. Attached to and forming a part of said record, as the same was made up and certified by the clerk of said district court

of Mesa county, Colo., was a statement under oath, signed by the district attorney of said county, which was made in support of an application to said court for permission to dismiss the prosecution against Gordon and Carlisle, and on the strength of which said action was dismissed on March 6, 1897, and the defendants at that time discharged. The statement so made by the district attorney is too lengthy to be set out in full. It will suffice to say generally that the district attorney by said statement represented, in substance, to the district court of Mesa county that he had carefully gone over all the evidence in the possession of the defendants Gordon and Carlisle upon which they intended to rely for the purpose of establishing their innocence of the charge of receiving stolen cattle, knowing the same to be stolen; that, as the result of such examination, and as the result of an examination of the evidence which could be produced by the state to substantiate the charge of receiving stolen property, he had become satisfied that the defendants were innocent, that a jury would so find, and that a trial of the case would be a useless expense, although the defendants were ready for a trial, and were anxious for an acquittal by a jury. When this record was offered by the plaintiff as an entirety, counsel for the defendant objected to the statement of the district attorney which was incorporated therein, and to the admission of this part of the record an exception was reserved. Before disposing of the exception, it is deemed advisable to state certain facts which, in our opinion, have an important bearing upon the question whether the admission by the trial court of the entire record was a material error: One of the defendant's attorneys, in his opening statement to the jury, which seems to have preceded the introduction of any evidence by either party, said to the jury, in substance, and with reference to the dismissal of the criminal proceedings in the state of Colorado, that Gordon and Carlisle went out there and turned state's evidence, and that then White, who had stolen the cattle, pleaded guilty, and "in consideration of that the prosecuting attorney dismissed the case as to Gordon and Carlisle." In the article which the defendant caused to be published in its paper on March 7, 1897, and which was pleaded by it in mitigation of damages, it was said, after stating the fact that the proceedings against Carlisle had been dismissed at the request of the district attorney, "he [Carlisle] was able to convince the prosecutor that the charges were false"; no mention being made of the circumstance, which was disclosed by the record of the Colorado court, that the action was dismissed by the district attorney notwithstanding the fact that the defendants were at the time anxious for a trial and an acquittal by a jury. The defendant's plea of justification also contained the statement that "after the plaintiff was taken to Colorado for trial the criminal information against him and Gordon was dismissed, and the same was never tried on the merits." It furthermore appears from the bill of exceptions that, long before the defendant filed its plea justifying the libelous publication, it was well advised of all the proceedings that had taken place in the Colorado court, including the sworn statement that had been made and filed therein by the district attorney, and that it was also well aware, through depositions which had previously been taken,

that S. P. Chipman, at whose instance the criminal proceedings in the state of Colorado had been instituted, and upon whose affidavit the criminal information against Carlisle and Gordon had been drawn, had himself testified, under oath, and in substance, that, at the time of making said affidavit to procure Carlisle's arrest, he "knew that Carlisle did not steal the cattle," that he "never supposed that Carlisle knew that they were stolen cattle," and that the criminal proceeding was set on foot in Mesa county merely to get him back to Colorado as a witness, so as to ascertain from whom he had purchased certain cattle which turned out to be stolen property. It will be conceded that the statements made by the district attorney of Mesa county, Colo., in support of his motion for leave to dismiss the criminal proceeding against Carlisle, were incompetent to show that he was not guilty of the crime of receiving stolen cattle. It goes without saying that upon that issue the statements were in the main hearsay or mere expressions of opinion; and if they had been admitted by the trial court to establish Carlisle's innocence, and the jury had been instructed on that theory, the error would have been fatal. The entire record of the Colorado court, including therein the sworn statement of the district attorney, was not admitted, however, upon any such theory as the one last suggested. When the entire record was received, the learned trial judge stated to the jury that the record was not admitted "as showing that Carlisle was not guilty of the charge, but as evidence of what was done in court," and as the court further remarked, in substance, to refute the inference which might be drawn from the opening statement of counsel, which has been heretofore mentioned. In the final charge to the jury allusion was again made to the statement of the district attorney, and the jury were again advised that they should "not regard any recitation of facts therein made as evidence of the innocence or guilt of Carlisle or Gordon of the offense of which they were charged" in the criminal information. The court further remarked in that connection that the statement was originally admitted in view of the suggestion of the defendant's counsel that the dismissal of the criminal proceedings had been brought about by some questionable means or influence. It is clear, therefore, that the jury were not left at liberty to attach any weight to the statements of the district attorney as bearing upon Carlisle's guilt or innocence, and, if they did so, their action was in plain disregard of the instructions of the trial court. Such action on the part of the jury will not be presumed.

It is claimed, however, that the statement in question was irrelevant to any issue in the case, and that, being irrelevant and immaterial, it must be presumed to have been prejudicial to the defendant company. We are not able to adopt that view of the evidence. The defendant had set forth the criminal proceedings in the Colorado court both in its plea of justification and in its plea in mitigation of damages. Having done so, it was bound to give a fair account of the proceedings, or at least not to give an account of the same which might lead to false inferences. Now, in its plea of justification the statement was made (and, as it seems to us, unnecessarily) that the criminal information against Carlisle "was never tried on the merits,"

which might be thought to imply that if it had been tried on its merits the result would have been different; also in its plea in mitigation of damages, wherein it copied the article of March 7, 1897, the defendant contented itself with the general statement that Carlisle "was able to convince the prosecutor that the charges were false," without stating the further circumstance that the district attorney had filed a sworn statement wherein he had represented to the court, in his official capacity, that the further prosecution of the case on the evidence in his possession would be "absurd and ridiculous" and "a useless expense," and that he prayed leave to dismiss the accusation, although the defendants had earnestly requested him to permit the case to be tried, in order that they might obtain an acquittal before a jury An article containing these statements, in substance, and stating what had actually occurred in the district court of Mesa county, Colo., would have had far more weight in remedying the wrong which, as the plaintiff claimed, had been done to him by reason of the libelous publication, than an article which merely stated that the information had been dismissed, and that the accused was able to convince the prosecutor that the charge against him was false. Moreover, we find no testimony in the record which tends to sustain the assertion of one of the defendant's attorneys, in his opening address to the jury, to the effect that the criminal proceeding in Colorado was dismissed in consideration of Carlisle's turning state's evidence and White's pleading guilty. In view of the false color which the several circumstances last mentioned tended to give to the proceedings in the Colorado court, we are of opinion that the entire record of that court was properly admitted in evidence. The jury were entitled to know all of the circumstances attending the dismissal of that proceeding, so far as the record of the court would disclose, to the end that they might determine, in the light of all the proceedings in that court, by what means the dismissal of the information had been secured, and what reasons had induced the district attorney to abandon the prosecution. Counsel for the defendant confessedly made a statement to the jury relative to the reasons or the considerations that had induced the prosecuting officer to dismiss the information against Carlisle and Gordon, which statement is contradicted by the entire record of the Colorado court; and, having made such a statement, whether through inadvertence, or by reason of false information, we do not perceive that the defendant is in a position to complain of the action of the learned trial judge in admitting the entire record, especially when its admission was accompanied with an admonition to the jury that it was only admitted to show all that occurred in the Colorado court, and that it could not be regarded as having any bearing on the question of Carlisle's guilt or innocence.

There is yet another ground on which the admissibility of the entire record in the Colorado case may be sustained. One of the issues which arose on the trial, and was hotly contested, and eventually submitted to the jury, was whether the defendant filed its plea of justification in good faith (that is to say, believing, and having reasonable grounds for believing, that Carlisle was guilty of the crime

imputed to him in the libelous publication), or whether it filed the plea for some ulterior and wrongful purpose. It was contended in behalf of the plaintiff that the plea in question was not filed in good faith, and in support of that contention it appears to have been urged in the trial court that the plea was filed, not because the defendant believed, or had reasonable ground to believe, that the plaintiff was guilty, but in pursuance of a business policy which the defendant had adopted of upholding all of its published statements, irrespective of the consequences either to itself or to others. If this was the true explanation of the defendant's conduct in justifying the libel, and the jury were convinced of that fact, then, within the authorities, there can be no doubt that the defendant was actuated by a wrongful motive in filing the plea; and the filing thereof, as the trial court ruled, should be regarded as a wanton repetition of the libel, which tended to show malice, and entitled the jury, if they were so inclined, to assess punitive damages. Browning v. Powers (Mo.) 38 S. W. 943, 946; Distin v. Rose, 69 N. Y. 122, 127, 128; Upton v. Hume, 24 Or. 420, 33 Pac. 810, 21 L. R. A. 493; Cruikshank v. Gordon, 118 N. Y. 178, 185, 23 N. E. 457; Association v. Schenck, 40 C. C. A. 163, 98 Fed. 925, 929. In view of the facts to which we have already adverted, namely, that the statement which had been made by the district attorney of Mesa county was well known to the defendant company, and that it was also aware that the person who had set the prosecution on foot had testified to his belief in Carlisle's innocence, long before the defendant's plea of justification was filed, we are constrained to hold that the entire record in the Colorado case, including therein the sworn statement of the district attorney, was relevant to the issue last above mentioned, respecting the motive which had inspired the defendant to justify the libelous publication. As bearing upon the motive which had actuated the defendant, a jury, as we think, might well attach considerable importance to the fact that the defendant had reiterated the libel, and had taken upon itself the burden of a public prosecutor, and had spent much time and money in hunting up evidence against the plaintiff, with a view of justifying its statement that he was a thief, after the public authorities of Mesa county, as it well knew, had abandoned all efforts in that direction, and after both the public prosecutor and the prosecuting witness had placed on record their sworn statements to the effect that the charge against the plaintiff was, in their opinion, false. Such conduct on the part of the defendant, being out of the usual course, and not in harmony with the ordinary actions of men under similar circumstances, might have induced the jury to infer that the defendant, in reaffirming the truth of the libel, and in endeavoring to produce evidence to that effect, was actuated by some motive other than an honest belief that the plaintiff was a cattle thief, and a desire to promote the public welfare by proving that fact. But, whether it would or would not have induced such a finding, we are of opinion that the entire record in the Colorado case was competent evidence, and that the jury were entitled to consider it for the purpose of determining, in the light of all of the proceedings in that case, and the other facts and circumstances in evidence, whether the defendant company had filed its

plea of justification in pursuance of an honest belief, based upon reasonable grounds, that the libelous statement was true.

The next assignment to be noticed relates to the admitted and excluded testimony of a witness by the name of Becker, who was the reporter by whom the libelous article of February 20, 1897, was composed, and who was principally responsible for its publication. After the present action was brought, and before the plea of justification was interposed, Becker was commissioned by the defendant company to go to Colorado and investigate all the circumstances attending the prosecution of Carlisle for receiving stolen cattle, with a view of preparing its defense. He left Kansas City on this mission in September, 1899, and was absent, as it seems, about two months, during which period he visited various places in Colorado, Utah, and New Mexico, and talked with numerous persons concerning Carlisle and Gordon, the depositions of which persons were subsequently taken in behalf of the defendant. Becker was present at the taking of some of the depositions, and nearly all of the witnesses who were produced by the defendant appear to have been discovered by him. He was also sworn as a witness on behalf of his employer, but on his direct examination his testimony was confined strictly to the circumstances that had originally led to the publication of the libelous article. The facts to which he testified in this respect were substantially the same as those which are detailed above in the plea of mitigation. Suffice it to say that Becker claimed to have derived all the information on which the article was based from conversations with the sheriff of Mesa county when the latter came to Kansas City and arrested Carlisle. He furthermore claimed to have composed the article as an ordinary item of news, in good faith and without malice. On Becker's cross-examination by the plaintiff's attorney he was required to disclose, over an objection that was interposed by the defendant, all the efforts which he had made to obtain evidence against Carlisle during his trip to Colorado, Utah, and New Mexico in the fall of 1899, and to describe the various places that he had visited, and to give the number of persons whom he had met and consulted, with a view of accomplishing the object of his mission. On his redirect examination the defendant company offered to show that while Becker was on the aforesaid mission he had talked with some eight or ten persons whose depositions had been taken by the defendant and had already been read in evidence, and what statements had been made to him by such persons with reference to Carlisle which had been communicated to the defendant before its plea of justification was filed. This offer of proof was excluded; the court ruling, in substance, that it must be presumed that all the facts relevant to the issue of Carlisle's guilt or innocence which Becker had ascertained were contained in the depositions of the persons aforesaid that had already been read, and that it would only permit counsel for the defendant to ask the witness the general questions whether he had reported to his principal all the facts which he had gathered while on the aforesaid trip, and whether he had made such report in good faith before the plea of justification was filed. To each of the aforesaid rulings an exception was taken. In states like Missouri, where the old rule applicable to actions of

slander and libel has been modified by statute (Rev. St. Mo. 1899, § 636) so as to permit a plea in mitigation of damages to be filed in connection with a plea of justification, and so as to permit evidence of mitigating circumstances to be introduced, although the plea justifying the libel is not sustained, the doctrine has become well established that the failure of the defendant to maintain the latter plea is not, in and of itself, evidence of such express malice as will warrant a jury in awarding the plaintiff more than his actual damages. Whether the repetition of the libel in a plea of justification shall be regarded as evidence of actual malice, and as an aggravation of the damages, depends upon the further inquiry whether such plea was interposed in good faith, under an honest belief in its truth, or in pursuance of some ulterior and wrongful motive. And this latter issue must be determined by the jury in the light of all the facts and circumstances in evidence, and particularly in the light of all the facts and circumstances that were known to the defendant, or that ought to have been known to him, at the time he reiterated the slander. Bush v. Prosser, 11 N. Y. 347; Hawver v. Hawver, 78 Ill. 412; Browning v. Powers (Mo. Sup.) 38 S. W. 943, 946; Upton v. Hume, 24 Or. 420, 33 Pac. 810, 21 L. R. A. 493; and other cases heretofore cited. It is evident, therefore, that the issue respecting the motive or the good faith of the defendant inheres in every action for slander or libel where a plea of justification is filed and is not sustained by the proof, although the issue is not formally raised by the pleadings, inasmuch as the jury, when they come to assess the damages, are entitled to determine what motive prompted the defendant to file the plea and to repeat the libelous charge. In view of this fact, we think that the trial court properly permitted the witness Becker to be asked on his cross-examination where he went, with how many persons he conversed, and how much time he spent in hunting up evidence against Carlisle after the criminal proceeding against him was known to have been dismissed under the circumstance heretofore stated. It will be conceded that the defendant had an undoubted right to seek evidence to support any defense to the present action which it was entitled under the law to make. The evidence elicited from Becker on his cross-examination was admissible, therefore, not because the defendant's conduct in seeking evidence against Carlisle was in any respect wrongful, but because it showed the knowledge which the defendant had acquired, or ought to have acquired, of the facts and circumstances which tended to establish the guilt or innocence of Carlisle, and what pains, if any, it had taken to ascertain the truth of the charge which it had made against the plaintiff before it reiterated the same. We are persuaded that the evidence in question had a direct bearing on the issue of good faith above stated, to which a jury might, and probably would, attach some importance.

A more serious question is whether the trial court properly denied the defendant's request to show by Becker, on his redirect examination, and as bearing on this same issue of good faith, certain facts which he had learned respecting Carlisle on his trip through Colorado and Utah prior to the filing of the plea of justification. The court ruled, as before stated, that whatever he may have heard which had

any legal tendency to establish the plea of justification was presumptively contained in the depositions that had already been read, and that the witness could not be permitted to testify further on that subject. It so happens, however, that important parts of the depositions had been excluded by the trial judge when they were read, upon the ground that the excluded testimony was incompetent to establish the two offenses of receiving stolen cattle, knowing the same to have been stolen, which were alleged in the plea of justification, and were the only offenses that were specifically charged in the plea. The testimony so excluded was that of some seven or eight witnesses who testified, in effect, that Carlisle and Gordon had been in the habit of employing men at their ranch in the Blue Mountain country in Southwestern Colorado, or the eastern border of Utah, who were "cattle rustlers" or thieves; that in that country Carlisle had the reputation of having men in his employ "who stole cattle"; that in consequence of that practice the reputation of the Carlisle outfit or camp "was bad"; and that Carlisle's general reputation in Southwestern Colorado was also bad. Now, assuming for present purposes that evidence of this sort was not receivable in support of the specific charge contained in the plea that Carlisle had received two lots of stolen cattle, knowing them to have been stolen, and that it was properly excluded when offered by the defendant for that purpose, yet a different question was presented when it was offered under the circumstances above detailed, not to show that the charge against Carlisle was true, or that the statements themselves were true, but that such statements had in fact been made to Becker, and had been communicated by him to the defendant before it filed its plea of justification. Bearing in mind that the jury had to determine what was the belief respecting the guilt or innocence of Carlisle which the defendant entertained when it filed its plea, and upon what information that belief was founded, and bearing in mind that the plaintiff had himself undertaken to cast suspicion upon the defendant's motives by showing the efforts which it had made to obtain evidence against him, and what it ought to have learned, we feel constrained to hold that Becker should have been allowed to testify on his redirect examination that the information above stated, in substance, had been communicated to him, and that it was believed by him to be trustworthy, and that the information so obtained was communicated to his employer before it filed its plea of justification. The admission of this evidence should have been accompanied, as a matter of course, with an admonition to the jury to the effect that the testimony was admitted for the purpose of enabling them to determine intelligently whether the defendant had acted in good faith in justifying the libel, and that it should only be considered by them in so far as it might be deemed important in resolving that issue.

In actions of malicious prosecution, where the issue as to the existence or nonexistence of probable cause is involved, it is always held to be competent to prove any statement made or information communicated to the defendant which would have any tendency to induce a person of ordinary prudence to believe or entertain a strong suspicion that the plaintiff was guilty of the offense for which he was pros-

ecuted. The important inquiries in such cases are: What did the prosecutor believe when the prosecution was instituted? Upon what information did that belief rest? And was it such information as would naturally influence an ordinary person to form an opinion respecting the plaintiff's guilt or innocence? Bacon v. Towne, 4 Cush. 217, 239. We conceive that a somewhat similar rule should be applied in actions of libel and slander, where a plea in justification of the libel is interposed and is not sustained, in consequence of which fact a subsidiary issue arises, as to the motive which prompted the defendant to file the plea. If a libelous statement is false, no amount of good faith in publishing the same will absolve the defendant from liability for the actual injury which is inflicted. But, on the other hand, punitive damages ought not to be assessed against a defendant for filing a plea of justification which was interposed in reliance upon information communicated to him which led him to believe that the plea was true, provided the information upon which he acted was of such a nature as would naturally inspire such a belief in the mind of an ordinarily prudent person. A defendant ought not to be mulcted in punitive damages for a mere mistake, unless in making the mistake he was so grossly negligent or utterly reckless of the rights of others as to warrant an inference that his motives were bad. Nor should facts be withheld from a jury when the issue involved is whether a given act was done with a malicious intent, if the facts are of such a nature as would ordinarily influence the judgments of men in forming an opinion upon that issue. We are of opinion, therefore, that, as bearing upon the issue of good faith or motive in a case like the one at bar, evidence should not be rejected which, taken in connection with other facts and circumstances already proven, has a tendency to show that when the defendant reiterated the false statement he believed that it was true, and supposed that the truth of the statement could be established. As was remarked in Bush v. Prosser, 11 N. Y. 347, 351, "a plaintiff will not, in the hands of an enlightened court and jury, be very likely to suffer injustice from evidence which goes merely to give character to and explain the conduct of the defendant." In the case at bar it was an admitted fact that many cattle had been stolen in the neighborhood of the Carlisle and Gordon ranch; that about 50 head of the stolen cattle were cut out of a herd belonging to Carlisle, or to Carlisle and Gordon, when they were on the road to market; and that one of the thieves was assisting in driving the herd when the stolen animals were discovered. In view of these facts, we think that such information as Becker obtained and communicated to his principal, namely, that Gordon and Carlisle had made a practice of having cattle thieves in their service, and that their camp or ranch had a bad reputation in the community where it was located, as being the resort of cattle thieves, would naturally have some influence with any person of ordinary caution in making up his mind whether Carlisle bought the cattle innocently, or was aware that they had been stolen. It goes without saying that, notwithstanding all the facts and circumstances last mentioned, Carlisle may have been entirely innocent of any offense, as the district attorney of Mesa County declared, and we would not be understood as intimat-

ing a contrary view. Nevertheless, as bearing upon his right to recover something more than compensatory damages, we think that Becker should have been allowed to disclose the information aforesaid on his redirect examination, when the plaintiff's attorneys opened the door and made such evidence on his part pertinent by the course pursued on the cross-examination. It is true that the information in question which Becker obtained and would have testified to was not pleaded specially in mitigation of damages; but it has been held (and the rule seems to us to be eminently fair and reasonable) that when the plaintiff in an action of libel or slander introduces in evidence facts not pleaded by him to create an inference of express malice and to lay a foundation for punitive damages, the defendant may, in turn, rebut such inference by proof of facts not pleaded which have a tendency to rebut it. Reiley v. Timme, 53 Wis. 63, 10 N. W. 5. It follows, therefore, that as Becker was cross-examined with reference to his efforts to obtain evidence against Carlisle, with a view of showing express malice on the part of the defendant and exaggerating the damages, the defendant was entitled to show on his redirect examination certain facts which he had discovered, or supposed that he had discovered, which tended to rebut the inference of malice which the plaintiff evidently intended that the jury should draw, although such facts had not been specially pleaded in mitigation. The amount of the verdict below renders it highly probable that the jury assessed punitive damages upon the theory that the plea justifying the libelous publication was not interposed in good faith, but for some ulterior and wrongful purpose. The presumption is, therefore, that the exclusion of the testimony heretofore considered was a prejudicial error, because of its tendency, if it had been admitted, to show that the plea was filed in good faith.

As the case must accordingly be sent back for a new trial, we do not deem it necessary to consider many other assignments presenting, as they do, questions which probably will not arise again, but shall content ourselves with a brief statement of our views respecting those questions that may be controverted on a retrial of the case.

We concur in the view which seems to have prevailed in the trial court, that the only facts which were sufficiently pleaded in the defendant's answer to justify the direct charge contained in the libelous publication, "that Carlisle was a member of a gang of cattle thieves which had been operating extensively in the western part of the state of Colorado, and that he acted as agent for the thieves in disposing of their stolen stock," are the allegations found therein to the effect that two men, Young and White, in the year 1896 stole 8 head of neat cattle, which cattle Carlisle and Gordon subsequently bought and received, knowing the same to have been stolen, and that in the same year they also feloniously bought and received 30 other head of neat cattle in San Juan county, Utah, which had theretofore been stolen, with knowledge of that fact. These were the only facts mentioned in the answer which were so pleaded as to amount to a justification of the libelous publication, and for that reason the trial court properly confined the evidence in support of the plea of justifi-

cation to those specific charges. Moreover, as the libelous article did not contain the statement that the general reputation of the Carlisle camp and outfit in the Blue Mountain country was bad, and as no complaint was made of any such statement, we do not perceive that proof to establish such bad reputation of the camp and outfit was admissible in support of the plea of justification; nor do we perceive that the defendant has any reason to complain of the exclusion of proof tending to show specific acts of thievery, or other offenses which had not been specifically alleged in the answer. It is clear that Carlisle could not be convicted of the crime of receiving stolen cattle by evidence that his camp had a bad name, as being the resort of persons who had an evil reputation; and it is equally certain that when one is charged with being a member of a gang of cattle thieves and an agent of cattle thieves, which is the substance of the libelous publication, and a plea justifying such a charge is filed, the pleader must allege specific instances of the theft of cattle committed by the plaintiff, or by him in concert with others, or specific instances of the receipt of stolen stock, knowing the same to have been stolen. We think that the trial court committed no error in trying the case along the lines last indicated.

An exception was taken at the trial because the court permitted Carlisle and another witness, by the name of Mostyn, to testify to what occurred between them at or near Ridgeway, Colo., when a number of the cattle which Carlisle was alleged to have received, knowing them to have been stolen, were discovered and cut out of a herd which belonged to Carlisle, as they were on their way to market. A complaint, as it seems, had been made to the sheriff of Mesa county, Colo., that certain cattle had disappeared and were supposed to have been stolen, in consequence of which complaint the sheriff deputed Mostyn, who was going to Ridgeway with a view of buying some of the Carlisle cattle, to examine the herd and ascertain if it contained any of the lost or stolen cattle. Both Mostyn and Carlisle were allowed, over an objection interposed by the defendant, to testify as to what occurred and what was said and done when Mostyn made his mission known, and discovered certain of the stolen cattle in the Carlisle herd. The statements made at that time were objected to by the defendant as self-serving declarations. We think, however, that this testimony was properly admitted. The charge against Carlisle being that he had received certain cattle, knowing them to have been stolen, it was his right and his duty to explain how the stolen stock had come into his possession when he was first advised that certain cattle in his herd had been stolen; and he was at liberty, as we think, to show what explanation was given at that time to the person who was deputed to examine the herd, and all that occurred on that occasion in his presence, either by his own testimony, or that of the witness Mostyn. The objection interposed to this evidence was properly overruled.

The defendant, on its part, offered to prove the substance of a conversation between White, who had stolen the cattle, and Gordon, which took place near Ridgeway on the occasion last aforesaid, but not in the presence or hearing of Carlisle, and such evidence was

excluded. This evidence, if it had been admitted, would have had a tendency to show that Carlisle, as well as Gordon, knew that certain cattle in the herd had been stolen, and that Gordon reported to White, but not in the presence of Carlisle, that Carlisle had said he "thought he would be able to dispose of them, all right." It is obvious that this conversation between White and Gordon, not in the presence of Carlisle, was only admissible upon the theory that at the time it was offered there was already sufficient evidence before the jury to establish a conspiracy between Carlisle, Gordon, and others to steal cattle, which made the declarations of any conspirator admissible against his fellow conspirators; and with reference to that contention it is sufficient to say that we agree with the trial court that the proof of the existence of such a conspiracy was altogether too intangible and uncertain to warrant it in permitting White, a convicted thief, to detail incriminating conversations which he pretended to have had with Gordon, but not in the presence or hearing of Carlisle. The trial judge wisely exercised his discretion in rejecting the proffered evidence. Wiborg v. U. S., 163 U. S. 632, 658, 16 Sup. Ct. 1127, 1197, 41 L. Ed. 289.

Without going more into detail, as the matters are comparatively unimportant, we shall content ourselves with the statement that no material error was committed by the trial court in excluding evidence of the general reputation of Carlisle at Concordia, Kan., a place where he did not reside; nor in excluding the petition in the suit which he caused to be brought against Wilson in the state of Kansas; nor in excluding certain affidavits which Carlisle had made with a view of obtaining changes of venue in certain actions which had been brought against him before certain justices of the peace. Nor was any error committed in permitting the plaintiff to show that the defendant company had made no mention in its paper, as an item of daily news, of the fact that Carlisle had brought suits against certain Kansas City newspapers for publishing libelous articles, similar to the one that it had itself published, relative to his arrest under the information lodged against him in Mesa county, Colo., for receiving stolen cattle. The action of the trial court in excluding some of this testimony was, in any event, largely discretionary; and the matters complained of, if any of the exceptions were well founded, would hardly justify this court in disturbing the verdict. We do not feel called upon to notice specially any of the exceptions which were taken to the charge of the trial court, further than we have already done, incidentally, in discussing other features of the case. The charge, in our judgment, was in the main correct, and embraced substantially all of the instructions which were tendered in behalf of the defendant. The judgment below is reversed, and the case is remanded for a new trial.

SANBORN, Circuit Judge. I concur in the result in this case, for other reasons than those stated in the opinion of the majority. The difference between us is radical, and conditions the theory of the trial of the case; and as it may eventually result in a review by the supreme court, on certificate or on writ of certiorari, of the next trial,

it seems to me proper to state my views, to the end that the parties may, if they desire to do so, avoid the question which divides us. It is the true answer to this question concerning which we differ: In an action for libel, in which the defendant interposes pleas of justification and of mitigation of the damages for the publication, may evidence which is not competent upon either of the issues thus raised be introduced to prove the good or bad faith, the good or evil purpose, with which the defendant filed the plea of justification? The opinion of the majority is that this question should be answered in the affirmative, while it seems to me that it should receive a negative answer. My understanding of the law is that the bad faith or evil purpose of a defendant in filing a plea of justification which will warrant a jury in finding malice and in awarding punitive damages is an inference from the plea, and from the competent evidence, or from the lack of competent evidence, in support of it, and that the existence or nonexistence of bad faith and evil purpose is not an independent issue, upon which evidence not competent upon the issues of justification and mitigation of damages for the publication can be lawfully received. There is a strange dearth of authority upon this question, attributable probably to the facts that few attorneys have supposed that evidence incompetent upon the issues pleaded could be introduced to try an issue which is not pleaded, and to the almost universal concession of the authorities that the law upon this subject is properly stated in the text-books in these words: "Pleading a justification on the record is not of itself evidence of malice on the part of the defendant, but it may aggravate the damages if the defendant either abandons the plea at the trial, or fails to prove it." Odgers, Lib. & Sland. (2d Ed.) 136; Starkie, Sland. & Lib. (5th Ed.) 498; Townsh. Sland. & Lib. (4th Ed.) § 400; 13 Am. & Eng. Enc. Law, 401; Browning v. Powers (Mo. Sup.) 38 S. W. 943, 946; Distin v. Rose, 69 N. Y. 122, 127, 128; Cruikshank v. Gordon, 118 N. Y. 178, 185, 23 N. E. 457; Hawver v. Hawver, 78 Ill. 412; Upton v. Hume, 24 Or. 420, 430, 33 Pac. 810, 21 L. R. A. 493; Association v. Schenck, 98 Fed. 925, 929, 40 C. C. A. 163, 167. All the cases cited in the opinion of the majority rest upon a lack of competent evidence to support the plea of justification, and in only one of them was any evidence admitted which was not competent either upon that plea or the plea of mitigation of damages for the publication; and in that single case (98 Fed. 929, 40 C. C. A. 167), the evidence was made admissible by the introduction by the opposite party of immaterial evidence which it was competent to rebut. The old rule was that upon a plea of justification no evidence was admissible which was not relevant to that issue, and that a failure to establish the plea was evidence that it was filed for an improper purpose, which the jury might consider in aggravation of damages. Under this rule no evidence could be introduced either in mitigation of damages for the publication of the libel, or in mitigation of damages for the filing of the plea. The statute of Missouri carved out of this rule an exception. It permitted the defendant to plead facts in mitigation of damages for the publication of the libel, and, after making this plea, to introduce evidence in mitigation of those damages. But it did not authorize either the plea

or the proof of facts in mitigation of the damages for filing a plea of justification. If a statutory amendment was indispensable to permit a plea and proof of mitigation of damages for the publication of a libel, why is it not equally indispensable to the allowance of a plea and proof of mitigation of damages for the filing of a plea of justification? The logical result of the rule and the statute is that all of the rule except that part destroyed by the exception remains, and that the defendant cannot lawfully introduce evidence otherwise incompetent in mitigation of the damages for filing, with a wrongful purpose and an evil intent, a plea of justification which he is unable to prove; and for the same reason the plaintiff cannot be permitted to introduce evidence otherwise incompetent to enhance damages of this nature. The converse of this rule permits the trial of an issue not pleaded, and is in its operation unjust, impracticable, and dangerous to both of the parties to an action for libel. It is perilous to the rights of the plaintiff, because it opens the door upon every plea of justification to the actual trial of that issue upon hearsay testimony easily manufactured by the defendant. For if, whenever justification is pleaded, the issue is presented whether or not this plea was filed in bad faith, with evil purpose, and if evidence competent on the latter issue and inadmissible on others may be introduced, everything which influenced the mind of the defendant in filing the plea,—every false and malicious saying about the charge in the libel, or similar charges about the reputation or character of the plaintiff, about his conduct and business,— becomes admissible to show the defendant's good faith, when coupled with his testimony that he heard and believed the statement, and the trial necessarily degenerates into a mere story factory. The judge may caution and charge the jury that these stories—that this mass of hearsay—is not evidence of the truth of the libel; but no human being can prevent such testimony from having great and probably controlling influence upon their minds in determining that issue, and thus in reality the truth of the charge in a libel will be decided, not by the facts, but by the stories which the defendant has heard. Nor is this rule less dangerous to the defendant. He has the right under the law to interpose his defense of justification, and to search for all facts and evidence to support it. Ormsby v. Douglass, 37 N. Y. 477; Doe v. Roe, 32 Hun, 628, 632; Willard v. Publishing Co., 65 N. Y. Supp. 75; Distin v. Rose, 69 N. Y. 122; Bisbey v. Shaw, 12 N. Y. 67. And yet if his good faith in exercising these rights is in issue the moment he avails himself of them, and if evidence not competent upon the issues of justification and of mitigation of the damages for the publication is admissible to assail his purpose, intent, and motive in defending himself, then whatever the plaintiff, his emissaries, or strangers have told the defendant or his attorneys before he files his answer regarding the falsity of the charge in the libel, the high character, good reputation, and commendable acts of the plaintiff becomes competent evidence in the case, and the trial of this unpleaded issue upon this hearsay evidence overshadows the true issues in the case and the actual facts, and practically deprives the defendant of a fair trial of the real issues. For the reasons which have now been briefly stated, this emphatic protest is entered against the adoption of such a prac-

tice, and it is insisted that the true rule is that, under pleas of justification and of mitigation of damages for the publication of a libel, no evidence is admissible which is not competent, relevant, and material to those issues, and that the good or bad faith and the right or wrong purpose of the defendant in filing the plea of justification must be determined from that evidence, or from the lack of it, and from these alone. Of course, if either party violates this rule and introduces incompetent evidence, the other party ought to be permitted to rebut it with evidence of the same class. Salt Lake City v. Smith (C. C. A.) 104 Fed. 457, 470. And, for this reason, when the court below had erroneously permitted the introduction of the testimony found in the cross-examination of Becker relative to his search for evidence to sustain the defense, it should have held an even hand, and have permitted the defendant to introduce the evidence of the same character offered upon his redirect examination.

But it was, in my opinion, error to permit the introduction of the statement of the district attorney in the case of the State v. Gordon and Carlisle, the testimony of Becker on his cross-examination relative to his search for evidence to sustain the defense, and all other evidence that was not competent upon the issues of justification and of mitigation of damages for the publication; and for this reason the judgment below is properly reversed. The statement of the district attorney was not made in an action to which the defendant was a party. It was not an admission of the defendant against interest. It was not made in a proceeding in which the defendant had an opportunity to appear or to cross-examine the witness. It was merely that which the district attorney wrote in a proceeding between strangers to the defendant, and as against it the statement was mere hearsay, and proved nothing that was found in it. It was incompetent to establish any fact in issue under the pleadings, because it was hearsay; and, for the reasons already stated, it was inadmissible upon the issue of the bad faith of the defendant, which was not pleaded. The matters referred to in the opinion of the majority as justifying its introduction were not in evidence when it was offered, and it was not proper to introduce any evidence to rebut statements in pleadings or remarks of counsel which were not relevant to any issue raised by the pleadings; and, if it had been, the writing of the district attorney was incompetent to rebut them, because it was hearsay and res inter alios acta.

The cross-examination of Becker relative to his search for evidence for the defense, in addition to its irrelevancy to any issue raised by the pleadings, was a flagrant violation of a basic rule of practice which is indispensable to the orderly conduct of a trial. The search made, facts discovered, and evidence gathered by Becker had not been mentioned or referred to in his direct examination. A witness is not subject to cross-examination upon any subject concerning which he has not been interrogated on his direct examination. If the plaintiff desired to examine this witness upon the matters referred to in this cross-examination, he could have made him his own witness, and then he might, in the discretion of the court, have been permitted to ask him leading questions; but he had no right to intro-

duce his testimony upon these matters, when the defendant had asked him no questions concerning them. Of this rule this court has lately said, through Judge Caldwell, "Without the observance of the fundamental rule on this subject, the trial of a cause would speedily degenerate into inextricable confusion and disorder." Mine & Smelter Co. v. Parke & Lacy Co., 107 Fed. 881; 1 Greenl. Ev. § 445; Hopkinson v. Leeds, 78 Pa. 396; Fulton v. Bank, 92 Pa. 112, 115. The judgment below is properly reversed, but, in my opinion, the next trial should be conducted in accordance with the rules of evidence to which attention has been called.