SPENCER v. READ et al.

(Circuit Court of Appeals, Eighth Circuit. September 7, 1914.)

No. 4100.

1. EVIDENCE (§ 253*)—ADMISSIONS OF CONSPIRATORS—STATEMENTS MADE AFTER END OF CONSPIRACY.

Where a conspiracy is charged, acts of one of the alleged conspirators, done while the conspiracy is pending, and in furtherance of its object, are deemed the acts of all, and may be shown in evidence against all, but after the conspiracy has come to an end, either through success or failure, admissions of one conspirator, by way of narration of past facts, are not admissible against others.

[Ed. Note.—For other cases, see Evidence, Cent. Dig. §§ 994–1002; Dec. Dig. § 253.*]

2. APPEAL AND ERROR (§ 970*) — TRIAL (§ 60*) — REVIEW — DISCRETION OF COURT—ORDER OF PROOF.

Declarations of alleged conspirators may be admitted before the conspiracy is sufficiently shown, the plaintiff undertaking to furnish such proof later, but this rests in the discretion of the trial court, and its ruling in admitting or excluding such testimony will not ordinarily be disturbed by an appellate court.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 3849–3851; Dec. Dig. § 970;* Trial, Cent. Dig. §§ 141–145; Dec. Dig. § 60.*]

3. EVIDENCE (§ 220*)—ADMISSIONS—FAILURE TO DENY STATEMENTS MADE IN NEWSPAPER ARTICLE.

A newspaper article containing statements concerning the acts of a party is not admissible in evidence against him merely because, when called to his attention, he did not deny the statements.

[Ed. Note.—For other cases, see Evidence, Cent. Dig. §§ 771–785; Dec. Dig. § 220.*]

In Error to the District Court of the United States for the Southern District of Iowa; Smith McPherson, Judge.

Action at law by E. R. Spencer, as trustee in bankruptcy of the Swanson Manufacturing Company, against Elbert A. Read, E. H. Mitchell, and Earl Sheets. Judgment for defendants, and plaintiff brings error. Affirmed.

This action was commenced December 29, 1911, in the United States District Court for the Southern District of Iowa, by the plaintiff, a citizen of Illinois, as trustee in bankruptcy of the Swanson Manufacturing Company, an Illinois corporation, against the defendants, Elbert A. Read, E. H. Mitchell, and Earl Sheets, citizens of the state of Iowa, to recover of said defendants $72,346.68, as the value of certain property alleged to have been wrongfully and fraudulently taken by them from the assets of said corporation in January, 1911. The trial resulted in a directed verdict and judgment for the defendants at the close of plaintiff's testimony, and the plaintiff brings error. The parties will be referred to as they were designated in the court below, the plaintiff in error as plaintiff, and the defendants in error as defendants.

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

D. W. Higbee, of Creston, Iowa (Lester H. Strawn, of Ottowa, Ill., on the brief), for plaintiff in error.

W. E. Mitchell, of Sidney, Iowa (Tinley, Mitchell & Pryor, of Council Bluffs, Iowa, and Ferguson & Barnes, of Shenandoah, on the brief), for defendants in error.

Before SANBORN and CARLAND, Circuit Judges, and REED, District Judge.

REED, District Judge (after stating the facts as above). The petition is quite lengthy, but alleges in substance that the plaintiff is the duly appointed trustee in bankruptcy of the Swanson Manufacturing Company, a corporation organized in November, 1910, under the laws of Illinois, for the manufacture of farm implements, located at the city of Marseilles, in that state, which corporation was adjudged bankrupt by the United States District Court for the Northern District of Illinois July 25, 1911, and the plaintiff duly appointed by that court as trustee in bankruptcy of its estate, and authorized to prosecute this action; that Herman S. Swanson (who is named in the petition as one of the defendants, but has not been served with summons and has not appeared in the action) was the principal owner of the stock of that corporation, owning $244,470 of its capital stock of $250,000; that Swanson, prior to the organization of said corporation, was the principal owner of the stock, and manager of the Swanson Manufacturing Company, a corporation organized under the laws of Iowa for the manufacture of farm implements, and located at Shenandoah, in Page county, that state (these corporations, being of the same name, will for convenience be referred to as the Iowa corporation and the Illinois corporation, respectively); that the Iowa corporation had become largely indebted to various parties in or near Shenandoah, Iowa, including the defendants Elbert A. Read, E. H. Mitchell, and Earl Sheets; that many citizens of the city of Marseilles, Ill., and others were desirous that the Illinois corporation should be permanently located at that city, and, for the purpose of encouraging such location, agreed to take at their face value a large amount of the bonds of said corporation, provided it should have, in addition to its property in Marseilles, $50,000 in cash, paid in as part of its capital stock; that the officers of said corporation had represented to said citizens that one John Hoss, a resident of Moline, Ill., was about to take stock in said corporation and to pay in cash the sum of $50,000 therefor, to be and remain a part of the capital stock of such corporation; that some time in January, 1911, said citizens of Marseilles and others had collected and paid into the First National Bank of that city about $40,000, to be used in paying for bonds to be issued by the Illinois corporation to be secured by a trust deed upon its property; that said John Hoss failed to pay in said sum of $50,000 for stock of said corporation, and for that reason the citizens of Marseilles and others declined to accept and pay for the bonds of said corporation; that the defendants, well knowing the premises, combined together to defraud and injure the said citizens of Marseilles and other creditors of said Illinois corporation, and agreed that they would obtain the said investment in the bonds of said corporation by citizens

of Marseilles and others, and thereafter wrongfully and unlawfully deprive said corporation of its capital and property and cause said corporation to become bankrupt; that, in pursuance of said conspiracy, the directors of said corporation secretly, fraudulently, and without notice to their creditors passed a resolution that said Illinois corporation should assume the indebtedness of the Iowa corporation, which said assumption of indebtedness was wholly without consideration and made solely for the purpose of robbing, cheating, and defrauding the creditors of the said Illinois corporation; that the defendants, in further pursuance of said conspiracy, deposited money to the amount of $25,000 to the credit of said Illinois corporation, falsely pretending that the same was paid in by said John Hoss according to the original representations made by the officers and directors of said corporation; that thereupon the said citizens of Marseilles and other creditors of said Illinois corporation purchased the bonds of said company and paid into said company the sum of $54,500, believing that said money would be used in the general business of said Illinois corporation; that said John Hoss wholly failed to pay in said sum of $50,000 for stock in said corporation, and the defendants then and there falsely misrepresented to the creditors of said corporation that he had so paid in said sum; that the defendant Elbert A. Read, in pursuance of said conspiracy, paid in the sum of $25,000, falsely pretending that the same came from the said John Hoss, and so informed the said citizens of Marseilles and other creditors, for the purpose of inducing them to buy said bonds, for the purpose of wrongfully obtaining money for the purchase of the bonds of said Illinois corporation; that the said Elbert A. Read and other defendants, with the consent and connivance of said Herman S. Swanson, and in pursuance of the conspiracy aforesaid, immediately and wrongfully took away said sum of $25,000 on January 27, 1911, and said sum was not in fact added to the capital and property of said corporation, but was wrongfully and fraudulently withdrawn from the capital and assets of said corporation by the defendants on said January 27, 1911, in pursuance of said conspiracy; that on the same day the defendants fraudulently took from the capital and assets of said corporation the further sum of $41,610.49 out of the moneys paid in for the bonds of said corporation, in pursuance of said conspiracy, for the pretended purpose of paying debts of the Iowa corporation, in which the defendants were personally interested; that afterwards, on January 31, 1911, said defendants, in pursuance of said conspiracy, wrongfully and fraudulently withdrew from the capital of the Illinois corporation the further sum of $5,736.19; that, by reason of and in pursuance of said conspiracy, said defendants have wrongfully, unlawfully, secretly, and without consideration taken from the capital and assets of said Illinois corporation the total sum of $72,346.68, for which sum judgment is asked against the defendants.

The answer of the defendants Elbert A. Read, E. H. Mitchell, and Earl Sheets is also quite lengthy. It will be best understood by stating briefly the ultimate facts alleged, without following the order thereof. As amended, it admits that the Swanson Manufacturing Company of Illinois was organized under the laws of that state in November, 1910, by Herman S. Swanson and certain citizens of Illinois; that it was ad-

judged bankrupt and the plaintiff duly appointed its trustee in bankruptcy in July, 1911, as alleged in the petition; that said Herman S. Swanson was, prior to its organization, a stockholder in and manager of the Swanson Manufacturing Company, a corporation organized under the laws of Iowa, and located at Shenandoah, in that state; and alleges that it was engaged in the manufacture and sale of farm implements and other implements and machinery at that place; that its capital stock was $65,000, $35,000 of which was preferred and $30,000 common stock; that the defendant Sheets owned 2 shares of the preferred stock, and the defendant Mitchell 40 shares, and the defendant Read held 5 shares of the preferred stock for another party; that other than this they had no interest in said corporation and were not and are not creditors thereof; that said Herman S. Swanson was president and manager of said corporation, and some time in the fall of 1910, at a meeting of its board of directors, informed said corporation that he desired to change its location to Marseilles, Ill., if an adjustment of its affairs at Shenandoah could be satisfactorily arranged; that subsequently the said Swanson, together with citizens of Marseilles, Ill., organized the Illinois corporation under the laws of that state; that at a legal meeting of the stockholders of the Iowa corporation, consisting of more than a majority thereof, these defendants were appointed by its stockholders a committee to adjust its affairs with the Illinois corporation; that, prior and subsequent to the organization of the Illinois corporation, it was contemplated that that corporation would purchase the property, real and personal, of the Iowa corporation; that after its organization, and for the purpose of accomplishing that purpose, the stockholders and directors of the Illinois corporation authorized and empowered said Herman S. Swanson (who was one of said officers) to negotiate for and purchase from the Iowa corporation all of its said property for the Illinois corporation; that thereafter, and on December 15, 1910, said Swanson, acting for and on behalf of the Illinois corporation, entered into a written agreement with these defendants, acting for and on behalf of the Iowa corporation, whereby the Illinois corporation agreed to purchase, and these defendants, acting for and on behalf of the Iowa corporation, agreed to sell, to the Illinois corporation all of its property, real and personal, at and for the sum of $47,392.68 (and certain debts of the Iowa corporation), to be settled and paid for on or before January 5, 1911; that said agreement was duly approved by both corporations, and said amounts were in fact paid to these defendants January 28, 1911, for the property of the Iowa corporation and for the benefit of its stockholders, which property had been previously conveyed to the Illinois corporation, and such conveyance placed in escrow with the First National Bank of Marseilles, Ill., until the purchase price was paid, a copy of which contract is attached to the answer as Exhibit A and made part thereof. The defendants deny all allegations of fraud, conspiracy, or other wrongdoings upon their part alleged in the petition, and deny all matters not specifically admitted. Many other matters are alleged, but they are mainly matters of evidence only and need not now be more specifically stated.

There was no reply by the plaintiff to this answer.

The plaintiff's testimony tends to show that in November, 1910,

there was a public meeting of citizens of Marseilles, Ill., held in that city, at which a committee of three of its citizens was appointed to solicit funds to induce the Swanson Manufacturing Company to locate in Marseilles; that members of this committee, together with Herman S. Swanson, called upon people they thought would subscribe or contribute to this purpose, and a subscription blank was circulated by them, a condition of which is:

"This subscription is contingent upon fifty thousand ($50,000.00) dollars in cash being added and paid into said company, in addition to the present property and assets of the said Swanson Manufacturing Company."

Mr. Tummel, of the soliciting committee, testified that Mr. Herman S. Swanson went around with the committee soliciting subscriptions, and said that they would employ about 125 men to start out; that they had plenty of capital; that Mr. Hoss was to put in $50,000 in cash and establish a credit of $100,000, which would give them plenty of money to do business with; that the committee was called to the First National Bank of Marseilles to meet Mr. Swanson and John Hoss. Hoss and Swanson both stated to us there what they intended to do. Hoss said he was going to put in $50,000 of his own money and establish a credit of $100,000. He was going to finance it, and he knew it was going to be a good thing. Mr. Swanson made similar statements when he was with the committee soliciting signatures to the subscription agreement. The testimony of the other committeemen is substantially the same.

The testimony further tends to show that a number of persons subscribed and paid for bonds of the Illinois corporation upon the strength of these statements and the condition of the subscription blank; but there is no evidence that either of the defendants, Read, Sheets, or Mitchell, participated in the solicitation of subscriptions or had anything to do with the organization of the Illinois corporation or its location at Marseilles, or made any statements as to what Hoss was to do, other than the alleged declarations of Swanson, hereinafter mentioned.

There was also testimony that a committee of citizens of Marseilles was appointed in November, 1910, to go to Shenandoah and investigate the Iowa corporation and the value of its property; that this committee reported in substance, among other things, that it found the Swanson Manufacturing Company was an active concern, needing more capital, a better location, and better financial facilities, hence the necessity for removal from Shenandoah; that the company stood well at home, and its product and business were well spoken of elsewhere by people well posted on business of the kind transacted; that the value of the personal property at Shenandoah was:

Machinery to be removed to Marseilles..........................$18,000 00
Shenandoah plant, which is a good property and said to be worth.. 30,000 00
Patterns, office furniture, and fixtures to be removed............. 15,033 81
Raw material................................................... 35,000 00

Mrs. Flora Bender, a witness on behalf of plaintiff, testified: That she worked for the Swanson Manufacturing Company of Shenandoah as stenographer and for H. S. Swanson from November, 1908, until

they moved to Marseilles in January, 1911; that she did a little work for the Swanson Manufacturing Company of Illinois under the direction of C. A. Brown, the auditor; that she left Marseilles July 8, 1911; that Mr. Swanson had private files aside from the files of the company. After identifying some correspondence that she wrote for Swanson while acting as stenographer, she testified:

"I remember the Iowa committee composed of Messrs. Read, Sheets, and Mitchell coming to Marseilles in the latter part of January, 1911. As I understood it, they made settlement with the Swanson Manufacturing Company for the stockholders of the Iowa corporation. I think they, or some of them, had been at Marseilles a day or two before that. I remember of Elbert Read coming back. I learned from the talk in the office at that time that they had been to Moline. When they returned, a settlement was made. There was present Read, Mitchell, Sheets, and, I believe, Fulton, of Marysville, Kan., and also Swanson. They were in the office of the company, most of the time in Swanson's room. I wrote the receipt that the committee signed. Exhibit C is the receipt, which reads as follows:

"Marseilles, Illinois, January 27, 1911.

"We, the undersigned committee, representing the preferred stockholders of the Swanson Manufacturing Company of Shenandoah, Iowa, hereby acknowledge receipt of one check for $~~25,610.49~~ 46,610.49 and one check of $20,000.00 to apply as follows:

| | | |
|---|---:|---:|
| Preferred stock | $18,943 | 50 |
| First Nat. Bank, Shenandoah, Iowa | 12,500 | 00 |
| Green Bay Lbr. Co., "   " | 978 | 74 |
| Hanson Lbr. Co., "   " | 952 | 36 |
| First Nat. Bank, Council Bluffs, Iowa | 9,881 | 39 |
| To cover interest | 300 | 00 |
| Total | $43,555 | 99 |

"[Signed]                         E. H. Mitchell.
                                "Earl Sheets.
                                "E. A. Read,
                                "By Earl Sheets."

She then identified checks of the Swanson Manufacturing Company of Marseilles, in the handwriting of Mr. Bender (her husband), signed in the name of the company, by H. S. Swanson, as president, in favor of E. A. Read, Earl Sheets, and E. H. Mitchell, as follows:

Exhibit D, check dated January 27, 1911, amount.................$46,610 49
Exhibit E, check dated January 27, 1911, amount.................. 20,000 00

"There was no check that I know of for $21,610.49, as stated in the receipt originally."

Exhibit F is check dated January 31, 1911, in favor of First National Bank of Council Bluffs, Iowa, for $1,873.75.

All of the foregoing checks were drawn on the First National Bank of Marseilles, Ill., and were paid to the payees. The witness continued:

"I am pretty sure Mr. Read was familiar with the financial condition of the Swanson Manufacturing Company of Shenandoah the latter part of 1910. He always seemed to be very anxious to have their note taken care of. As I remember, he used to have Swanson sign his own name on the back of the notes. Q. Did H. S. Swanson explain to you and Mr. A. C. Bender the discrepancy of $25,000 between the receipt that has been offered in evidence here and the checks? (Objected to by the defendants.) By the Court: You know,

217 F.—33

and I know, and every lawyer knows, that declarations such as this are not competent, but courts will admit them, because, regardless of that, the professional statement of counsel is that they will connect up. Do you make this statement that you will? Mr. Strawn: I think we have done so already. The Court: Oh, well, if you do not, you are wasting your time, and I will have to take it all away from the jury. (Objection overruled. Defendants except.) A. We had a conversation with Mr. Swanson one day, about noon, in the office regarding the discrepancy of $25,000 on the books which Mr. Brown, the auditor, did not know to what account we must charge it. Mr. Swanson said he guessed * * * he might just as well tell Mr. Bender what he knew about it, because Mr. Brown was a man that would find it out anyway. And he told us that this money (this $25,000) was a plan suggested by Elbert Read; that he loaned Mr. Hoss this $25,000 to be deposited in the First National Bank of Marseilles, Ill., until the news went out that John Hoss had put up the $50,000, and that the bondholders in Marseilles would then pay in their money, as they refused to pay it in until John Hoss had put up the $50,000, and that this money was left in the bank but a few hours, and the news went out, and then they began to pay in their money. I said to Mr. Swanson, 'Do you think that was exactly fair to the Marseilles people?' or something of that kind. And he says: 'Well, that is not the question, whether it is fair or not. That was the only thing to do, and they saw, unless the money was forthcoming in some manner, the deal would fall through with. So he had to put it up in some way.'" Mr. Mitchell: I move to strike that out. The Court: It will remain in on this statement of counsel that they will connect these three defendants with that. (Overruled.) The Court: Mr. Strawn, let us end this once and for all. When do you say that these defendants brought that money back here to Iowa? Mr. Strawn: They brought it back in three bunches at three different times. The Court: When? Mr. Strawn: January 31st. The Court: Now, I understand that the last money was brought back to Iowa on January 31, 1911. (The Court now rules that anything said either orally or in writing subsequent to January 31, 1911, by any person other than one of these three defendants is excluded from the case and will be excluded as offered hereafter.)"

## A. C. Bender (husband of Mrs. Bender) testified:

"I went with the Swanson Manufacturing Company in the latter part of 1910. I was general office man. I could not say in round numbers how much they were owing. I went to Marseilles with the company. My work was on the books. I left Marseilles about the middle of July. The Mr. Brown spoken of in the evidence was an auditor in the employ of the New York Audit Company of Chicago. I remember E. A. Read, Earl Sheets, and E. H. Mitchell coming to Marseilles in January, 1911. I do not remember how long they were there. They came, went away, and came back again. I remember the day that they had some sort of settlement in the office. Swanson told me to draw these checks Exhibits D and E, one for $46,610.49 and the other for $20,000. When Mr. Brown and I were working on the books, we could not make the entry properly. When crediting the First National Bank of Marseilles with the $25,000, we could not find what account to charge it to. We debited it to John Hoss. Just why we did it I cannot explain. When these checks were given, the three committeemen, Read, Mitchell, and Sheets, were present. When the receipt was given, Sheets and Mitchell were present, but Read had left."

There is some further testimony as to the contents of the books.

Mrs. Bender was recalled for further cross-examination and testified as follows:

"By the Court: Mrs. Bender, I want to ask a question or two before you proceed: You testified yesterday afternoon to a conversation with Mr. Swanson in the presence of your husband, as to what Mr. Swanson said; a part of the testimony being: 'He said, "Well, I might as well tell you, because Mr. Brown is a man that will find this out."' When did this conversation take place? A. I would not be safe in saying, but it was shortly after the settle-

ment and when Mr. Brown was there trying to make the entry on the books. It was after the checks were issued. The Court: That is all."

There is some other evidence not necessary to be noticed in the view we take of the case.

At the close of the plaintiff's testimony the defendants moved for a directed verdict in their favor upon the following grounds: (1) That the petition does not state a cause of action. (2) That the allegations of the petition are not supported by any evidence. (3) That the evidence shows that the petition was insufficient for the reason that it seeks to recover certain moneys which it is alleged were paid to the Swanson Manufacturing Company of Shenandoah, Iowa, and preferred stockholders of said company, and certain creditors of said company, and that it does not tender back to these defendants any of the property which the Swanson Manufacturing Company of Marseilles, Ill., received from the Swanson Manufacturing Company of Shenandoah, Iowa, and that the plaintiff, as trustee, stands in the shoes of the Swanson Manufacturing Company of Illinois. (4) That the Illinois Company has appropriated to its own use a large amount of property received from the Shenandoah corporation and all of the assets of said corporation, and has failed and neglected to surrender back or tender back any of the assets of said corporation, which they received as a consideration for parting with the money now sought to be recovered. (5) That the evidence fails to show any fraud, misrepresentations, or conspiracy upon the part of these defendants, or any of them, in procuring a contract of settlement between these two companies.

This motion was sustained, and judgment entered for the defendants, to which the plaintiff excepted and assigns as error that the court erred: (1) In sustaining the objections of the defendants to the questions propounded to the witness by plaintiff as to the actions and conduct of Herman S. Swanson in regard to the alleged conspiracy done and performed after January 31, 1911. (2) In permitting defendants to introduce evidence tending to show that the Swanson Manufacturing Company of Illinois had received notes of John Hoss to the amount of $40,000. (3) In taking from the consideration of the jury the testimony of Mrs. Bender with reference to conversations, which she either took part in or heard between H. S. Swanson and her husband with reference to what Mr. Swanson said by way of explanation, wherein Swanson said that he might as well tell that Mr. Brown would get onto it anyway; the same being with reference to the conduct of the defendants Read, Mitchell, and Sheets in obtaining money from the Swanson Manufacturing Company of Illinois on and prior to January 31, 1911. (4) In sustaining the objection of defendants to the introduction of Exhibit K, being a newspaper called the Morris Herald, and particularly the article therein contained headed "Get Rich Quick," etc.; the same forming the subject of conversation between the witness Mr. Fishbaugh and the defendant E. H. Mitchell. (5) In sustaining the motion to direct a verdict for the defendants. (6) In holding that the plaintiff, as trustee in bankruptcy of the Illinois corporation, only stands in the shoes of that corporation.

[1] The first and third assignments of error challenge the correctness of the ruling of the court in excluding the testimony of the witnesses Flora Bender and her husband, A. C. Bender, as to the declarations of Herman S. Swanson, made some time after the issuance of the checks by him as president of the Illinois corporation to the defendants. The plaintiff's cause of action, as alleged in the petition, is grounded upon an alleged conspiracy between the defendants, Read, Sheets, and Mitchell, and Herman S. Swanson, to fraudulently induce citizens of Marseilles (not named in the petition) to pay their several subscriptions for bonds of the Illinois corporation, to the end that the defendants, with the connivance and consent of Swanson, might wrongfully and fraudulently withdraw from the treasury of the Illinois corporation the money, or a part of it, paid by such citizens for the bonds subscribed by them to pay for the property and certain debts of the Iowa corporation.

It is undoubtedly true that, in all cases where a conspiracy is shown, the act of one conspirator in the prosecution of the enterprise is considered the act of all, and may be shown in evidence against all. But only those acts and declarations are admissible under this rule which are done and made while the conspiracy is pending, and in furtherance of its object. After the conspiracy has come to an end, either by success or by failure of the enterprise, the admissions of one conspirator by way of narration of past facts are not admissible in evidence against the others. 1 Greenl. Ev. § 184a (16th Ed.); Logan v. United States, 144 U. S. 263, 309, 12 Sup. Ct. 617, 36 L. Ed. 429; Brown v. United States, 150 U. S. 93, 98, 14 Sup. Ct. 37, 37 L. Ed. 1010; Kansas City Star v. Carlisle, 108 Fed. 344, 361, 47 C. C. A. 384.

There is no substantial evidence, either direct or circumstantial, of any agreement or arrangement whatever between Swanson and the defendants, or either of them, to obtain money or property fraudulently from the Illinois corporation. The most that can be said of the evidence is that there are some circumstances tending to show that the defendants, or some of them, loaned to Hoss $25,000, upon his note for that amount to enable him to pay in part his subscription to the capital stock of the Illinois corporation, which sum was shortly after withdrawn upon the transfer of such note to the corporation. In the absence of direct evidence of an unlawful conspiracy, a wide latitude is allowed in admitting circumstantial evidence to prove its existence, and that was permitted by the trial court in this case.

[2] Declarations of the alleged conspirators may be admitted before the conspiracy is sufficiently shown, the plaintiff undertaking to furnish such proof later; but this rests in the discretion of the trial court, and its ruling in admitting or excluding such testimony will not ordinarily be disturbed by an appellate court. Kansas City Star v. Carlisle, 108 Fed. 344, 361, 47 C. C. A. 384, above. Swanson for some reason was not served with summons in this case, though named in the petition as a defendant, and is not therefore a party to the suit, nor was he called as a witness. The declarations of Swanson, testified to by Mrs. Bender, were made some time after the alleged con-

spiracy had come to an end by the receipt of these checks from the Illinois corporation. There was no error, therefore, in excluding the testimony of Mrs. Bender and her husband as to the alleged declarations of Swanson. If a conspiracy was to be proven against these defendants, it must be by testimony introduced in the usual way, so as to afford them an opportunity to cross-examine the witness or witnesses by whom such conspiracy is sought to be established. It could not rightly be established by statements of others directly admitting such conspiracy, or from which it might be inferred after it had ended.

The second assignment of error challenges the correctness of the ruling admitting testimony tending to show that the Illinois corporation had received notes of $40,000, or some other amount, from John Hoss. This testimony was developed upon cross-examination of plaintiff's witness as to the contents or entries upon the books of the Illinois corporation. There was no reversible error in permitting such cross-examination.

[3] Complaint is next made of the exclusion of an article published in the Morris Herald of August 11, 1911 (a newspaper published at Morris, Ill.). To understand the merits of this complaint, it is necessary to state, in addition to the testimony already stated, that there was offered in evidence by the plaintiff a clipping from this issue of the newspaper mentioned, entitled "Get Rich Quick Deal, Marseilles People Stung by High Finance, Swanson Deal." This clipping is an attempt at "a humorous write-up" of what purports to be the efforts of citizens of Marseilles to secure the location at that place of the Swanson Manufacturing Company in lieu of some manufacturing plant recently removed from Marseilles to Moline, Ill., and the subsequent bankruptcy of the Swanson concern, and the resulting loss to the Marseilles citizens. A witness testified that he had a copy of this paper of August 11th at his place of business in Shenandoah some time in the fall of 1911, and, as the defendant Mitchell was passing one day, called to him and said, "I did not know you were such a scoundrel or bad man as this," and showed him the article; that Mitchell read it aloud in his presence and the presence of some others and laughed and said, "That is about the way we got the money; that he had had many difficult transactions in which it was difficult to get money; that this was difficult, and that the credit belonged, not to him, but to Read; that without Read's method they would never have succeeded in getting this money." He did not deny in my presence any of these statements in the transactions. At best this clipping would be admissible against Mitchell only as an admission of the truth of the facts stated therein, because he did not, upon reading the article, deny them; but he says the credit for securing the money belonged to Read. not to him, and surely the clipping is not admissible against Read. Nor is it admissible as against Mitchell, for one is not called upon to deny the truth of matters appearing in the public press concerning him, to which his attention may be called, under the circumstances shown in this case, to avoid personal responsibility for such matters. There is no merit in this assignment of error.

It is also urged that the court erred in holding that the plaintiff, as trustee in bankruptcy of the Illinois corporation, stands in the shoes of that corporation and succeeded only to its rights as against these defendants; the contention being that the trustee, under section 70e of the Bankruptcy Act (Comp. St. 1913, § 9654), succeeds to the rights of any creditor of the corporation, and may recover against the defendants to the same extent that any creditor of the corporation might have recovered against them. Admitting, without deciding, this to be so, it suffices to say that, under the testimony adduced by the plaintiff, no creditor of the bankrupt corporation could have recovered against these defendants upon the grounds alleged in the plaintiff's petition.

Finally it is urged that there was error in directing the verdict for the defendants. It must suffice to say of this assignment that we have carefully considered the entire evidence in behalf of the plaintiff, and are of the opinion that, if a verdict was returned thereon for the plaintiff, it would have been the duty of the court to set it aside for want of sufficient support in the evidence. It was therefore the duty of the court to direct a verdict for the defendants and to render judgment thereon for costs against the plaintiff.

The judgment is affirmed.