[Civ. No. 418.   Fifth Dist.   Mar. 11, 1965.]

FRESNO AIR SERVICE, Plaintiff and Respondent, v. A. CHARLES WOOD, JR., Defendant and Appellant.

Lawrence Kennedy for Defendant and Appellant.

Perry, Price & Carter, J. C. Price and Creede, Dawson and McElrath for Plaintiff and Respondent.

BROWN (R.M.), J.—Appellant appeals from a judgment in favor of respondent for $17,900 for damages to a Bonanza airplane.

Appellant chartered respondent's airplane to take him from Fresno to Hawthorne, Nevada, and return. Fred

Mazzie, the pilot, had taken appellant on several occasions to Nevada and was well aware that appellant had a drinking problem. Prior to November 5, 1962, the date of the charter in question, the appellant had been taking flying lessons and on this date on their flight to Hawthorne the appellant had been drinking and was permitted to handle the controls of the airplane. That night at dinner the appellant mentioned to Mr. Mazzie that he was going to die the next day, this, apparently, in anticipation of a bronchoscopy examination which he was awaiting. Appellant drank a substantial amount of liquor during the remainder of the night. The next morning he and Fred Mazzie commenced their return flight to Fresno. However, it was fogged in at Fresno and it was necessary for the airplane to land at a little duster strip nearby. Both appellant and the pilot got out of the airplane. The pilot did not take the keys to the plane with him but tossed them on the dashboard, just behind the windshield, pulled out the mixture control, turned the master switch off, but did not set the brakes or put chocks under the wheels as he testified he usually did. There was a house nearby and the pilot walked towards it, with the appellant following behind, with the intention of using the telephone to call the weather bureau. While in the house preparing to call the plaintiff air service after having already contacted the weather bureau, he heard a noise outside which was the motor of the airplane in question being started with a wide-open throttle. In order to start the airplane, the master switch must be first turned on, then the generator switch, the mixture control pushed in, the fuel booster pump turned on, the ignition key turned on, the throttle set and the starter button pushed.

On hearing the airplane start, the pilot ran out of the house in time to see the plane go down the runway, ultimately hit two levees, land on its nose and stop in a dump, and the appellant was at the controls, though he professes not to remember starting the airplane.

The appellant testified that on the flight to Hawthorne he had done some straight and level flying, that he did some drinking and gambling at Hawthorne and in particular, that he did not intend to commit suicide, though he was worried about his forthcoming health and lung examination. He admitted that no one gave him permission to start or attempt to fly the airplane.

The complaint was filed for damages for destruction of a Beechcraft ''Bonanza'' airplane. At the pretrial conference

the plaintiff struck out the question of contributory negligence as an issue in his pretrial statement. At this conference the propriety of assumption of risk as an issue was argued and a pretrial conference order was entered fixing as one of the issues the assumption of risk by respondent.

On the completion of all the testimony at the trial, and before argument, the attorneys, while in chambers, were discussing instructions. The court ruled that it would not give any instructions on assumption of risk as requested by appellant's attorney, and also that he may not argue on the subject.

Respondent has set forth various discussions between the attorneys and the court relating to plaintiff's objection to assumption of risk as an issue in the case, but such does not appear from the record.

Rule 216 of the California Rules of Court sets forth the provisions for modification of the pretrial order at or before trial, to prevent manifest injustice. Though the court in effect did modify the pretrial order, no motion to that effect was made. We note that in *Patrick J. Ruane, Inc.* v. *Parker,* 185 Cal.App.2d 488, the court at pages 492-493 [8 Cal.Rptr. 379] criticizes the trial court in not delving into the matter to discover the true nature of the controversy, thus settling the issues to be tried. Yet, it did affirm the lower court's judgment. However, ". . . rigid adherence to pretrial conference agreements should not be exacted, especially where so to do will result in injustice to one party and relaxing of such agreement will not cause prejudice to the other party." (*Smith Contracting Corp.* v. *Trojan Constr. Co.,* 192 F.2d 234, 236.)

In *Zielinski* v. *Philadelphia Piers, Inc.,* 139 F.Supp. 408, at page 414, the court said: "Since this is a pre-trial order, it may be modified at the trial if the trial judge determines from the facts which then appear that justice so requires."

We would be circuitous in our reasoning if we were to hold that assumption of risk was a proper issue in the pretrial order and require a new trial at which time we were to find that assumption of risk was not a proper issue in this case, and thus it would be error for the court to instruct on that doctrine.

Thus, we have concluded that the appellant's position was not prejudiced by the failure of respondent to move to amend the pretrial conference order or the failure of the trial court to specifically amend the pretrial order, though it should have done so.

The question before us is whether or not assumption of risk was a proper issue in the trial of the case.

■ "[T]he gist of an action in the nature of trespass is injury to the plaintiff or to real or personal property in his possession, . . ." (48 Cal.Jur.2d, Trespass, § 2, p. 4.)

■ "[L]iability for actual damages, in a civil action for injury caused by a trespass, is in no way dependent on the intent or motive with which the trespass was committed." (48 Cal.Jur.2d, Trespass, § 5, p. 7.)

■ "Any unlawful interference with the personal property of another or exercise of dominion over it by which the owner is damnified gives rise to an action in the nature of trespass de bonis asportatis." (48 Cal.Jur.2d, § 9, p. 10.)

Assumption of risk may be a defense to actions in negligence. (See 2 Witkin, Summary of Cal. Law, Torts, § 51, pp. 1223-1224, and 35 Cal.Jur.2d, Negligence, § 267, pp. 814.)

Cases involving the assumption of risk are usually based on the type of action where the plaintiff who is physically hurt sues the defendant. In *Hayes* v. *Richfield Oil Corp.*, 38 Cal.2d 375 [240 P.2d 580], the plaintiff fell into an open grease pit; in *Prescott* v. *Ralphs Grocery Co.*, 42 Cal.2d 158 [265 P.2d 904], the customer fell and sued the store; in *Gomes* v. *Byrne*, 51 Cal.2d 418 [333 P.2d 754], and in *Smythe* v. *Schacht*, 93 Cal.App.2d 315 [209 P.2d 114], the plaintiff was bitten by a dog. These two latter cases discuss the assumption of risk doctrine and hold that there are stringent boundary rules even in this type of case in that the party who was injured must have some knowledge of the existence of the danger or that it is obvious, or must have actual knowledge, as distinguished from constructive notice, though actual knowledge may be inferred from the circumstances.

■ We do not feel that the possibility that the defendant was going to commit suicide, although he testified to the contrary, would give the respondent such information to put him on notice that the appellant would take the plane and attempt to fly it.

In *Poggi* v. *Scott*, 167 Cal. 372 [139 P. 815, 51 L.R.A. N.S. 925], the plaintiff had left some wine in storage in a rented warehouse. The defendant, without the consent of the plaintiff, took the barrels and converted them to his own use. The court said at page 375 that everyone must be sure of his legal right when he invades the possession of another; that, "neither good nor bad faith, neither care nor negli-

gence, neither knowledge nor ignorance, are of the gist of the action. '. . . Nor, indeed, is negligence any necessary part of the case. . . . the act itself . . . is unlawful and redressible as a tort.' '' (See also *Reynolds* v. *Lerman,* 138 Cal.App.2d 586 [292 P.2d 559], and 2 Witkin, Summary of Cal. Law, Torts, § 139, pp. 1312-1313.)

▮ Negligence is no part of an action for conversion. (*Reynolds* v. *Lerman, supra,* at page 593; *Poggi* v. *Scott, supra.*) In volume 2 of Witkin's Summary of California Law, section 139, at pages 1312-1313, it is said: ''Conversion is the wrongful exercise of dominion over personal property of another. [Citations.] The property need not be appropriated to the use of the defendant; it may be destroyed, or merely damaged. [Citations.]

''. . . . . . . . . . .

''The injured party usually may elect among several remedies: (1) Specific recovery of the property, with damages for its detention. [Citations.] (2) Damages for conversion, based on the value of the property. [Citation.] (3) Quasi-contractual recovery based on 'waiver of tort.' [Citations.] (4) Action to quiet title. [Citation.]''

It will be noted that the trial judge submitted this case to the jury on ''strict liability'' in giving plaintiff's instruction No. 9-A as follows: ''The foundation of the action is the unwarranted interference by Defendant with the dominion over the property of the Plaintiff, from which injury to the latter results. Therefore, neither good nor bad faith, neither care nor negligence, neither knowledge nor ignorance are of the gist of the action.''

▮ It is ''strict liability'' when neither care nor negligence, neither good nor bad faith, neither knowledge nor ignorance will save the defendant.

▮ It would appear that assumption of risk is a defense to negligence actions (2 Witkin, Summary of Cal. Law, Torts, §§ 349 et seq., pp. 1551-1554), but is no part of any action of conversion.

Most of the cases cited by appellant with reference to automobiles involve injuries to third persons. In *Strnod* v. *Abadie,* 181 Cal.App.2d 737 [5 Cal.Rptr. 627], the guest sued the driver; in *Murray* v. *Wright,* 166 Cal.App.2d 589 [333 P.2d 111], and in *Brooker* v. *El Encino Co.,* 216 Cal.App.2d 598 [31 Cal.Rptr. 24], the plaintiff was injured by a car driven by a thief where the defendant had left his keys in the car; in *Gallegos* v. *Nash, San Francisco,* 137 Cal.App.2d

14 [289 P.2d 835], the action for damages for injuries was based on faulty brakes; and in *King* v. *Kaplan,* 94 Cal.App.2d 697 [211 P.2d 578], personal injury was also involved.

■ Whether such an act as herein involved was justified or excused is discussed in section 893 of the Restatement of Torts, at page 491: ''A person who knows that another has created a danger or is doing a dangerous act or that the land or chattels of another are dangerous, and who nevertheless chooses to enter upon or to remain within or permit his things to remain within the area of risk is not entitled to recover for harm unintentionally caused to him or his things by the other's conduct or by the condition of the premises, except where the other's conduct constitutes a breach of duty to him or to a third person and has created a situation in which it is reasonably necessary to undergo a risk in order to protect a right or avert a harm.''

Penal Code section 499d provides that any person who operates an aircraft not his own without the owner's consent with intent to permanently or temporarily deprive the owner thereof of his title or possession is guilty of a felony.

Public Utilities Code sections 21407 et seq. generally set forth the law as to the operation of an aircraft in a careless or reckless manner, making it unlawful to operate an aircraft by one who is under the influence of liquor.

■ Assumption of risk and contributory negligence appear to fall within the general field of trespass and negligence regarding personal injury actions and hence are not applicable as theories of law and defenses to actions for trespass to personal property or for breach of contract.

The judgment is affirmed.

Conley, P. J., and Stone, J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied May 5, 1965.