106 N.J. Super. 353 (1969)
255 A.2d 807
SAMUEL SHEITELMAN, INC., t/a THE MART, A NEW JERSEY CORPORATION, PLAINTIFF-APPELLANT,
v.
CHARLES HOFFMAN, t/a HOFFMAN CHAIR CO., DEFENDANT-RESPONDENT.
Superior Court of New Jersey, Appellate Division.
Argued April 21, 1969.
Decided July 9, 1969.
*354 Before Judges SULLIVAN, FOLEY and LEWIS.
Mr. Samuel A. Gennet argued the cause for appellant (Mr. Aram R. Schefrin on the brief).
Mr. H. Frank Pettit argued the cause for respondent (Messrs. Pettit, Carlton & Higgins, attorneys).
The opinion of the court was delivered by FOLEY, J.A.D.
In this negligence  breach of warranty case plaintiff appeals from a judgment of the Law Division entered upon a jury verdict of no cause of action.
Plaintiff is a furniture dealer whose business establishment is located on Route 22, Union, New Jersey. In accordance with its annual custom plaintiff planned to conduct an out-of-door furniture sale over the Fourth of July holiday in 1963. In anticipation thereof, defendant was engaged to supply a tent for the purpose of protecting displays of furniture outside the store. Defendant had provided similar tents for the same purpose in 1961 and 1962. In 1961 plaintiff accepted defendant's recommendations concerning the manner of erection of the tent and of the flooring within the tent, and was assured that the displayed merchandise would be protected from the elements. The installation made in those two years was satisfactory and apparently fully served plaintiff's purpose.
On June 27, 1963 defendant again erected a tent and plaintiff proceeded to move its merchandise into it. On July 2, after some of the merchandise had been transferred to the tent a rainstorm occurred. Water poured through a part of the tent and it collapsed. According to plaintiff, "all of our *355 furniture, ninety-nine per cent, was completely ruined." The present action followed.
In separate counts of its complaint plaintiff alleged negligence "in failing to properly erect and secure the tent and in failing to supply a tent of waterproof material," and that defendant breached its warranty to provide a tent which was "fit for the use intended and of merchantable quality." In answer, defendant alleged as an affirmative defense that the occurrence was an act of God.
At the trial, in support of its defense that plaintiff's damage was the result of an act of God and therefore not actionable, defendant offered in evidence two articles which appeared in local newspapers on July 3 reporting severe-thunderstorms accompanied by rain on July 2, in the general area in which the town of Union is located. The court admitted large portions of the articles for their "factual content" and then, over the objection of plaintiff, read to the jury as follows:
"Ladies and gentlemen, counsel has asked that a newspaper report of certain facts reported by the Newark Star Ledger and the Newark News be read to you as indicating factual references to the nature of the storm. The Court has consented that parts of the articles in each paper be read to you. I shall do that myself.
The following appeared in the Newark Star Ledger in its Wednesday, July 3rd edition.
`Strong gusty winds accompanying the rain in Millburn caused telephone, fire and power lines to fall. The Wyoming section of the residential town was left without power for a good part of the day. A large tree was blown down at Church and Spring Streets in Millburn. While the thunder showers in Newark provided little more than a trace of rain, approximately an inch fell in South Plainfield area. Five houses in Union County were struck by lightning. In Union lightning started a roof fire of a home. In Bloomfield lightning struck four homes within ten minutes. During the height of the storm trees were knocked down in Cedar Grove.'
The following appeared in the Newark Evening News Edition for July 3rd, 1963:
`With thunder showers leading the way a mass of drier and somewhat cooler air moved in from the west to break the grip of the ten-day heat wave. Many communities reported damage as well as relief from the heat as gusty winds and rain swept the State. In Bloomfield a bolt of lightning hit a chimney of a home. Another bolt of *356 lightning hit a fire alarm box in Bloomfield. In Millburn, telephone and power lines were down leaving the community's Wyoming section without power for several minutes. A big tree was blown over in Millburn. And lightning struck the rafters of a house in West Caldwell. In Union County lightning struck houses in several communities. And wires were blown down in several communities, namely Hillside, Mountainside, Union and Roselle. Property damage was light and no one was injured. A bolt of lightning struck a tree in Union and in Elizabeth. Strong winds broke off a large tree branch. The rain was too brief in most areas to make a dent in the lengthy draught that plagued farmers and lawn tenders. Only three hundredths of an inch fell in Newark, although an inch was reported in South Plainfield.'"
The general rule is that newspapers or newspaper articles are not ordinarily admissible as evidence of the facts stated therein. 29 Am. Jur.2d, Evidence, § 885. This rule was followed by New Jersey in State v. Otis Elevator Co., 10 N.J. 504 (1962).
In this case, then, admissibility required a showing that the articles were a recognized exception to the hearsay rule. Defendant argues that Evidence Rule 63(13) validated the evidentiary quality of the articles as such an exception. Evidence Rule 63(13) provides:
"A writing offered as a memorandum or record of acts, conditions or events is admissible to prove the facts stated therein if the writing or the record upon which it is based was made in the regular course of a business, at or about the time of the act, condition or event recorded, and if the sources of information from which it was made and the method and circumstances of its preparation were such as to justify its admission." (Emphasis added)
We think the evidence in question was inadmissible and plainly prejudicial. The rationale of the rule is that "records, made in the regular course of business by those who have a competent knowledge of the facts recorded and a self interest to be served through the accuracy of the entries made and kept with knowledge that they will be relied upon in a systematic conduct of such business, are accurate and trustworthy." Watts v. Delaware Coach Co., 5 Terry 283, 58 A.2d 689 (Del. Sup. Ct. 1948). While in that case the court was *357 discussing the Uniform Business Records as Evidence Act, see N.J.S. 2A:82-34 through 37, that enactment differs from Evidence Rule 63 (13) only in the respect that under the rule the custodian of the business record need not be called as a witness to attest its authenticity.
A newspaper article is a product of the newspaper business, as distinguished from a record maintained for the purpose of systematically conducting the business itself. While accuracy of reporting is highly desirable from the standpoint of the newspaper-reading public, inaccuracy of reporting bears no direct relationship to the newspaper publishing business itself. Generally, there is no legal obligation on a newspaper reporter to give such an accurate account of the subject upon which he reports as would vouch for its truthfulness. Compare Fagan v. Newark, 78 N.J. Super. 294, 319 (App. Div. 1963).
Moreover, there was no showing as required by Evidence Rule 63 (13) that the sources of information upon which the reports were based and the method and circumstances of the preparation of them were such as to justify admission into evidence. Indeed, the identity of the reporters was not revealed. Their personal knowledge of the events reported was not shown, nor do we know whether the reports as published were rewritten or edited by office employees of the newspaper.
For these reasons we reverse and remand for a new trial.