Charles **ROTMAN** and **Ida Rotman,**
Appellants,

v.

Carl **HIRSCH, Appellee.**

No. 54988.

Supreme Court of Iowa.

June 29, 1972.

Reynolds, Kenline, Roedell, Breitbach & McCarthy, Dubuque, for appellants.

R. N. Russo, Dubuque, for appellee.

REYNOLDSON, Justice.

Plaintiffs brought a law action alleging negligence of defendant who contracted to make alterations in their building, which collapsed during progress of the work. The jury returned a verdict on defendant's counterclaim for labor and materials furnished under the contract. From judgment on the verdict, plaintiffs appeal. We reverse and remand.

Charles Rotman and his wife Ida Rotman owned several old, brick, three-story, contiguous buildings fronting east on Iowa Street in Dubuque. The buildings were 113 feet long, terminating at an alley on the west. The southernmost building, designated 301 and 309 Iowa Street, was bisected by a wide, brick, load-bearing wall into two 20-foot wide sections running east and west. Mr. Rotman, hereafter referred to as plaintiff, conducted an auto parts and accessories business in these buildings.

Plaintiff wanted a 50-foot opening made in the center load-bearing wall at the ground floor level of the 301–309 building. He consulted defendant, who at that time was a building contractor. There is no dispute it was defendant who suggested to plaintiff the manner in which the opening would be made, and the materials required to support the load then carried by that portion of the wall to be removed. It is also uncontroverted plaintiff relied on defendant's skill and judgment. Following execution of a contract prepared by the parties, work commenced.

The wall at the first floor level was shored up and two 25-foot steel beams inserted into it at the ceiling level. A steel post supported the beam on the east end. Another supporting post was inserted approximately midway in the opening, and the abutting ends of the two beams welded at that location. At the west end of the opening the beam was inserted approximately two feet into the wall, thus concentrating the weight at that location on a limited surface.

On February 15, 1963, one day after the final shoring braces on the wall were removed, employees of both defendant and plaintiff heard and saw the bearing wall collapsing in the area of the opening and attempted to place supports under the beam at the west end of the opening. Wisdom overcoming valor, they fled the building. Moments later it collapsed, except for the extreme west wall abutting the alley.

Plaintiff's expert witness, a registered architect retained following the building collapse, computed the load on that portion of the old wall supporting the steel beam, and also on the steel beam itself, and testified both were overloaded and failure was imminent. Defendant's testimony supported his theory that the collapse was caused by alleged presence of ice in the bearing wall.

I. Plaintiff contends trial court erred in receiving into evidence, over objections, a Dubuque newspaper story of October 7, 1962. A photograph depicting a bulge in a brick-walled building carried the caption "MOVING OUT—The separation (arrow) in the wall at 301 Iowa caused the city to close the alley running behind the building." The story related:

"DUBUQUE WALL BULGING OUT
Alley Closed Just in Case

Charles Rotman's building needs a girdle.

A section of the rear wall of his building at 301 Iowa is bulging. It's a gradual bulge that spreads to about a five inch separation at the top.

Rotman, proprietor of the building which runs to 339 Iowa, said, 'It's been that way for a few years, but never this bad.'

He explained the wall was constructed 17 years ago to support an inner wall that was weakening.

The city was notified of the defect and the alley running behind the 'moving wall' has been closed.

Rotman was nonchalant about the whole matter. 'If it's going to fall, that's all there is to it, just so nobody gets hurt.'

A contractor will repair the wall Monday—if it's there."

Upon cross-examination of plaintiff, defense counsel caused the newspaper picture and article to be marked as exhibit 37.

There followed a persistent examination of this witness, much of it by reiteration of questions to which objection had been sustained, concerning the exhibit and plaintiff's reported statements. Defense counsel's purpose was "to get him to affirm or deny the contents of that news story." Trial court admonished counsel the jury would not be permitted to see the exhibit. Plaintiff's responses to repeated inquiries conceded he might have made the statement but did not recall.

Defendant called as a witness Bernie Shellum from Minneapolis. As a reporter for the Dubuque newspaper in 1962 and 1963, he had written the news story. Again there was an extensive examination with numerous objections. The witness was definite that plaintiff had made the statements attributed to him, but conceded the story might have been edited. He could not recall, after seven years, whether the picture portrayed plaintiff's buildings toward the north end, middle, or south end on the alley side. As a matter of fact, the record is clear the photograph was of the northwest corner of the 321 Iowa building, which was north of the building involved here. It was also undisputed this wall had been repaired before the 301–309 Iowa building collapse and immediately after that incident the west (alley) walls of all the buildings were still standing.

■ Plaintiff objected to the admission of exhibit 37 on the grounds no proper foundation was laid; it constituted hearsay; it was incompetent, irrelevant and immaterial; and it was prejudicial. In its ruling admitting the newspaper article, trial court observed, " * * * Exhibit 37 adequately identifies the location of the building. Plaintiffs' objections are therefore overruled and * * * Exhibit 37 is admitted in evidence." The repeated erroneous and unsworn statement in the news story that the building wall was at "301 Iowa" was thus accepted by the court as foundation for admission. This clearly was hearsay. 32 C.J.S., Evidence § 726 p. 1031. Plaintiff was right in contending there was no proper foundation laid for the introduction of exhibit 37. As evidence it was also unrelated to the issues and was therefore irrelevant and immaterial.

■ We have said under some circumstances newspaper articles may be admissible for limited and special purposes. Fanning v. Mapco, Inc., 181 N.W.2d 190 (Iowa 1970); Fryer v. New York Brokerage Co., 152 Iowa 688, 133 N.W. 110 (1911). But the general rule that newspaper articles are not admissible as proof of their contents governs this case. Fanning v. Mapco, Inc., 181 N.W.2d 190 (Iowa 1970); Samuel Sheitelman, Inc. v. Hoffman, 106 N.J.Super. 353, 255 A.2d 807 (1969); 3 B. Jones, The Law of Evidence § 631, p. 1199 (5th ed. 1958); 29 Am.Jur.2d, Evidence § 885, p. 989; 32 C.J.S., Evidence § 726, p. 1031. See Spencer v. Read, 217 F. 508 (8 Cir. 1914); In re Hull's Will, 117 Iowa 738, 89 N.W. 979 (1902).

More than 46 pages of the 262 page printed record are devoted to the testimony, objections and controversy injected into this case by the newspaper article. The news story before us was clearly prejudicial, but not only in its mistaken identification of the "moving wall." The facetious conclusion the building needed a girdle and the characterization of plaintiff's attitude as "nonchalant" could have a strong adverse impact on the jury.

Trial court's error necessitates a reversal. We make brief reference to other assignments of error, as the case must be retried.

■ II. The contract between these parties was incorporated as part of the petition. The final clause provided, "The contractor must have complete insurance of his own to cover on this job." When questioned about this provision on cross-examination (without objection), plaintiff testified defendant did not have insurance. Upon cross-examination of defendant, plaintiff's counsel inquired if he had obtained insurance. Defendant volunteered he had told plaintiff he could not get insurance and plaintiff had responded "Don't worry, I've got the insurance." When plaintiff took the stand on rebuttal to deny making such statement, trial court sustained the objection that the question was irrelevant to any of the issues. Plaintiff assigns this ruling as error.

We agree there is no issue in this case relating to insurance coverage for either party. Motion in limine or timely objec-

tion should prevent this question from arising on retrial.

 III. Plaintiff also contends trial court erred in failing to instruct on his affirmative defense of contributory negligence, pled in response to defendant's counterclaim for sums due under the contract.

We have grave doubts plaintiff adequately preserved this error in his exceptions to instructions. In any event, contributory negligence would not be available as a defense to an action on contract. Carter v. Hawaii Transportation Co., 201 F.Supp. 301 (D.Hawaii 1961); Hart v. Coleman, 192 Ala. 447, 68 So. 315 (1915); Fresno Air Service v. Wood, 232 Cal.App. 2d 801, 43 Cal.Rptr. 276 (1965); 17A C.J. S., Contracts § 525(1), p. 1018. Trial court committed no error in failing to submit contributory negligence as a defense to this division of the counterclaim.

Reversed and remanded.

All Justices concur.